THE STATE at the Relation and to the Use of KANSAS CITY v. KANSAS CITY TERMINAL RAILWAY COMPANY.

In Banc, July 14, 1914.

1. **ORDINANCE: Reasonableness: Long Record: Pronouncement of Ultimate Conclusion.** Where the Supreme Court is called upon to pass upon the reasonableness or unreasonableness of an ordinance requiring a viaduct in a certain street to be widened, which question is to be determined by a mass of oral evidence occupying more than 150 pages of printed matter and as many pages more of maps, profiles, photographs, etc., and a statement of the substance of the evidence would prolong the opinion beyond a reasonable length, the court will conscientiously read the evidence and, determine therefrom whether or not the ordinance is reasonable, and thereafter simply state its conclusion.

2. ———: ———: **Viaduct.** Where the property owners had constructed a viaduct sixty feet wide over respondent's railroad tracks, and thereafter an ordinance had been enacted to widen the street to eighty feet and that had been done, an ordinance requiring the railway company to widen the viaduct at its own expense to eighty feet, is held to be unreasonable.

Mandamus.

WRIT DENIED.

*A. F. Evans, J. W. Garner* and *R. H. Field* for relator.

The ordinance in question is clearly authorized by the Enabling Act and by the provisions of the charter and also by the provisions of Ordinance 2336, which was duly accepted by the respondent, and under which it has constructed the terminal station.    Secs. 9751, 9752, 9753, R. S. 1909; Sec. 1, par. 12, art. 3, p. 142, Revised Charter and Ordinances of Kansas City; Pars. B. & H., sec. 6, Ordinance 2336; Tobacco Co. v. St. Louis, 247 Mo. 374.    Unless the unreasonableness of an ordinance is apparent upon its face, the burden is upon the person asserting it to be unreasonable to show the same by the facts in the case and all reasonable doubts are solved in favor of its validity.    St Louis v. Theatre Co., 202 Mo. 690; Morse v. Westport, 110 Mo. 502; Tobacco Co. v. St. Louis, 247 Mo. 374; Railroad v. Omaha, 197 Fed. 516; Railroad v. Defiance, 167 U. S. 188.    Kansas City has the right and power to legislate with regard to local affairs.    Constitution of Missouri, sec. 16, art. 9, Revised Charter and Ordinances of Kansas, p. 355; State ex rel. v. Field, 99 Mo. 352; Brun v. Kansas City, 216 Mo. 108; State ex rel. v. Scarritt, 127 Mo. 642; Kansas City v. Ward, 134 Mo. 172; Morrow v. Kansas City, 186 Mo. 675; St. Louis v. Dorr, 145 Mo. 466; Stevens v. Kansas City, 146 Mo. 460; Meier v. St. Louis, 180 Mo. 391; Morrow v. Kansas City, 186 Mo. 675; Kansas City v. Bacon, 147 Mo. 259; Kansas City v. Oil Co., 140 Mo. 558; Kansas City v. Mastin, 169 Mo. 80; Jaicks v. Merrill, 201 Mo. 91; State ex rel. v. Seehorn, 246 Mo. 541.    Proceedings to widen a viaduct in a public street is in substance and effect a proceeding to widen the street.    Kansas City

v. Woershaeffer, 249 Mo. 45; Tobacco Co. v. St. Louis, 247 Mo. 374. Uncompensated obedience to a regulation enacted for the public safety under the police power of the State is not taking or damaging without just compensation of private property. Tobacco Co. v. St. Louis, 247 Mo. 444; Railroad v. Bristol, 151 U. S. 556; Railroad v. Railroad Commission, 221 U. S. 400; Railroad v. Nebraska, 47 Neb. 549, 170 U. S. 57.

*Samuel W. Moore* and *Samuel W. Sawyer* for respondent.

Ordinance number 15232 is unreasonable. 2 Lewis Em. Dom. (3 Ed.), sec. 417; Kansas City v. Railroad, 102 Mo. 633; Hook v. Railroad, 133 Mo. 313; Railroad v. Gordon, 157 Mo. 71; Gunning Co. v. St. Louis, 235 Mo. 99; Gunning Co. v. Kansas City, 240 Mo. 659; Tranbarger v. Railroad, 250 Mo. 46; Stone v. Mississippi, 101 U. S. 816; Gas Co. v. Light Co., 115 U. S. 672; Mugler v. Kansas, 123 U. S. 623; Railroad v. Bristol, 151 U. S. 556; Lawton v. Steele, 152 U. S. 133; Railroad v. Nebraska, 170 U. S. 57; Railroad v. Duluth, 208 U. S. 583; Dobbins v. Los Angeles, 195 U. S. 223; Tobacco Co. v. St. Louis, 247 Mo. 374.

WALKER, J.—This is a mandamus proceeding instituted in this court by the Attorney-General, to the use of the parties mentioned, to compel the respondent to widen and pave the Main street viaduct in Kansas City, from the north line of its right of way, as it crosses said street, south to a point where said street would intersect with Twenty-third street, if extended westerly to Main.

The alternative writ was issued, and as no question is raised as to the sufficiency of the pleadings (which cover sixty-five pages of printed matter) they will be put aside with the brief statement that they

were sufficient to present the law and facts contended for by the respective parties.

Issues of fact being presented by the pleadings, this court appointed R. E. Ball, Esquire, of the Kansas City Bar, to take the testimony and report the same to this court; in pursuance to said order our learned commissioner duly qualified and proceeded to discharge the important duties so imposed upon him. In due time he took the testimony, covering something like five hundred pages of printed matter, and maps, plats, profiles, photographs, etc., I know not how many, yet many times more voluminous than the printed matter, and in due time reported the same to this court, for all of which we extend to him our sincere thanks.

The evidence reported by the commissioner, in so far as necessary, under the view we take of the case, shows substantially the following facts:

That under ordinance the New Union Station at Kansas City had been located on Main street, between Twenty-first and Twenty-third streets; that Main was the principal street running north and south through the city, connecting the business with the resident districts; that the general width of Main street was about eighty feet; but from Seventeenth street south to Twenty-seventh street, it was of various widths from sixty to seventy feet.

That upon the location of the Union Station, the enterprising property-owners in that vicinity conceived the idea that it would be good business to build a viaduct along Main street over respondent's tracks, extending from about Twenty-first street to Twenty-third, the exact location and distances not clearly stated. That Main street at this point was about sixty feet in width, and the property-owners, through a corporation, by permission of the city, constructed the viaduct the full width of the street at a cost of $125,000, the respondent paying no part thereof.

After all these matters had become realities, at an enormous expense and cost—that of the respondent in building the depot and necessary tracks, etc., running into millions of dollars, $4,000,000 at least—the city council in its wisdom concluded that because of the location of the depot at that place, and the topography of the country and the condition of the streets in that vicinity, running north and south, and east and west, the public good would be served by widening Main street to a uniform width of eighty feet, and in pursuance thereto an ordinance was duly enacted and approved ordering Main street widened to eighty feet, and that all the private property on the sides thereof be condemned for that purpose, etc., all of which was accordingly done.

Subsequently to all of this, the city duly enacted an ordinance requiring the respondent in effect to widen the viaduct on Main street which the property-owners had theretofore constructed over its right of way and tracks, from sixty feet to eighty feet, which would cost about $80,000, in order to make it conform to the newly established width of Main street. That after this ordinance had become effective, the respondent was duly notified and requested to extend the viaduct in conformity to the provisions of said ordinance to the full width of Main street. This the respondent refused to do—hence this suit.

Counsel for the respective parties have presented and discussed the State and Federal constitutional questions usually lodged in this class of cases; the charter powers of Kansas City; the Public Service Commission Act; the provisions of the various ordinances mentioned, and their meaning; the impairment of contracts; the confiscation of property; due process of law; and the unreasonableness of ordinance numbered 15232, ordering the respondent to widen the viaduct

Unreasonable Ordinance.

mentioned therein on Main street. There is but one question presented by this record which we feel duty-bound to adjudicate, and that is the reasonableness of the ordinance requiring respondent to widen the viaduct on Main street. The oral testimony bearing directly and indirectly upon this question covers one hundred or more pages of printed matter, besides innumerable plats, profiles, photographs, etc., which all told, I suppose would cover fully as much or more.

When we are called upon to pass upon the reasonableness or unreasonableness of an ordinance, buried so deeply as this one is, under such a mass of parol testimony and documentary evidence, it can hardly be expected of us to set out even the substance of the evidence preserved in the record, for the reason that a statement of the substance of the evidence would prolong this opinion beyond a reasonable length.

In such case as this, all we can do is to conscientiously read the evidence pro and con bearing upon the issues, and determine therefrom whether or not the ordinance is reasonable or unreasonable, and thereafter state our conclusions. We have done that in this case; and after giving due consideration and weight to the authority and wisdom of the city council of Kansas City and its peculiar knowledge of the local wants and necessities of a great city, we feel constrained, in the light of this record, in the absence of an actual test of the capacity of the streets leading to and in the immediate vicinity of the Union Station to care for and accommodate the traffic of such an important center, to hold that ordinance numbered 15232 is unreasonable, null and void, and of no force or effect. [American Tobacco Co. v. St. Louis, 247 Mo. 374.]

This view of the case renders it unnecessary for us to pass upon the numerous other questions so ably and seriously presented and discussed by counsel for the respective parties, which we might add, in pass-

ing, as evidenced by the numerous authorities cited, have in this State become almost academic. What the future may develop, is not for us to prophesy, but we will add, that, "sufficient unto the day is the evil thereof."

We are, therefore, of the opinion that a peremptory writ of mandamus should be denied, and that the alternative writ heretofore issued should be recalled and quashed, and it is so ordered. All concur.