THE STATE ex rel. MISSOURI, KANSAS & TEXAS RAILWAY COMPANY et al., Appellants, v. PUBLIC SERVICE COMMISSION et al.

THE STATE ex rel. WABASH RAILWAY COMPANY et al., Appellants, v. PUBLIC SERVICE COMMISSION et al.

In Banc, June 30, 1917.

1. **CROSSINGS: Subways: Powers of Public Service Commission.** The Public Service Commission is given power by statute to regulate and provide for alterations and maintenance of all street crossings by railroads, whether they be by subway, at grade or overhead.

2. **SUBWAY: Abandonment of Street.** The construction by a railroad of a subway twenty-one feet wide over a street originally eighty feet wide and the acquiescence in said use of the street for thirty years by the city, are not such an abandonment of the rest of the street as precludes the Public Service Commission from compelling the railroad company to so widen the subway as to provide a passageway forty feet wide within the original limits of the street.

3. **CONSTRUCTION OF NEW SUBWAY: Arbitrary and Unreasonable Order.** Where the tracks of the two railway companies cut a town of 15,000 people almost in halves, it is not arbitrary or unreasonable to require them to widen to forty feet and to increase by two feet in height a subway twenty-one feet wide and ten feet high, which, with the exception of numerous tracks at grade, affords the only means of passing from one side of the city to the other, and is inadequate to accommodate the traffic

at that point, and is so constructed as to allow dirt and oil to drop through on travelers and to cause horses to become frightened from the noise of trains overhead, although the present structure or bridge is of ample strength to support passing engines and with repairs might be used for that purpose for five or six years. The safety of passing trains is not the sole or controlling consideration; the convenience and necessities of the traveling public using the street must be considered.

4. **CONTRACT TO MAINTAIN A SUBWAY: Police Power.** The exercise by a city of its police powers cannot be limited by contract, and a contract by which a city barters away its control over its streets, whatever may be its consideration and however formally entered into, is void. An agreement between a railroad company and the city, entered into at the time a subway for pedestrians and a bridge for trains at a street crossing were constructed, whereby it was agreed that the city would maintain the subway and keep it in repair and if it became necessary at any time to rebuild it each would bear one-half the cost, is not binding on the city, and does not obligate the city to pay one-half the expense of widening and reconstructing the subway.

5. **ORDER TO BUILD SUBWAY: Directed to Receiver of Railroad: Consent of Federal Court.** A city which seeks an order from the Public Service Commission to compel a railroad company to build a subway at a street crossing over which railroad tracks pass is not required to first obtain the consent of the Federal court having jurisdiction over the receivership to proceed against the receiver of said railroad. Consent of the Federal court is not necessary in order that the Public Service Commission may in the exercise of the police powers of the State proceed to promulgate its orders.

Appeal from Randolph Circuit Court.—*Hon. A. W. Walker*, Judge.

AFFIRMED.

*J. W. Jamison* for appellant Missouri, Kansas & Texas Railway Company.

(1) The order of the commission and the confirmation thereof by the circuit court of Randolph County are void, in that they would take, damage and destroy the property of appellants, for a public use without just compensation; without any compensation, and without assessment of damages and the payment of the same, all in

violation of section 21, article 2, Constitution of Missouri. Investment Co. v. St. Joseph, 191 Mo. 459; Telephone & Telegraph Co. v. Railroad, 202 Mo. 656; Railroad v. Pfau, 212 Mo. 398; Railroad v. Realty Co., 205 Mo. 167; Railroad v. Woodward, 193 Mo. 656; Lusk v. Atkinson, 186 S. W. 703; Railroad v. Public Service Commission, 266 Mo. 333. (2) Rollins Street as now existing does not cross the railroad tracks of the Missouri, Kansas & Texas at grade. The jurisdiction of the Commission is limited to grade crossings. Subsection 2, section 50, Public Service Act Laws 1913, 589. (3) The testimony shows the present subway to be safe and reasonably sufficient to accommodate the travel on Rollins Street, and the order of the commission requiring appellants to substitute an expensive bridge structure for the present structure is, under the circumstances of the case, unreasonable, inequitable and arbitrary. State ex rel. v. Terminal Ry., 260 Mo. 439; St. Louis v. Tobacco Co., 247 Mo. 394; Macon v. Atkinson, 181 S. W. 396; Chicago v. Railroad, 91 N. E. 425; Railroad v. Public Service Comm., 266 Mo. 333. (4) In 1887 the city of Moberly abandoned a portion of Rollins Street to the appellants and the Wabash Railroad Company. Immediately thereafter, in the construction of the subway, the railroads extended their dumps and abutments over and into that part of the street so surrendered to them, and have ever since occupied that space, and there has ever since been a non-user of the same by the public. Non-user by the public of a portion of a street for a period of more than twenty years is sufficient to raise the presumption of an abandonment by the public of the right. State v. Culver, 65 Mo. 610; State v. Young, 27 Mo. 259; Brown v. Railroad, 20 Mo. App. 432; Weber v. Iowa City, 97 N. W. 637. (5) The order of the commission was beyond and in excess of its authority for the further reason that the complaint was originally filed against the Missouri, Kansas & Texas Railway Company, to which the receiver was not a party. A hearing was had on this complaint, and the cause was submitted. Afterwards, the case was reopened, and the receiver was then made a party, but without his consent. Neither did the complainant obtain from the

United States district court, by whose order the receiver was appointed, leave to prosecute said action against him. The procuring of such leave was a condition precedent to the right to prosecute said complaint. Coster v. Railroad, 131 Fed. 115; Railroad v. Davis, 135 Fed. 707.

*J. L. Minnis, N. S*. *Brown* and *O. C. Phillips* for appellant Wabash Railroad Company.

(1) The width of Rollins Street at the point of crossing of the Wabash right of way and tracks is limited to the width of the present subway by reason of the abandonment of the prior grade crossing, pursuant to the provisions of the contract between the Wabash and city of Moberly, dated September 14, 1887; and the commission is without power under the statute to require said street to be widened, and without power to require appellant to perform any work beyond the present boundaries of Rollins Street. Depot Co. v. St. Louis, 76 Mo. 391; Hickman v. Link, 116 Mo. 127; Investment Co. v. Railroad, 108 Mo. 64; Scarritt v. Railroad, 148 Mo. 682; Hatton v. Railroad, 253 Mo. 675; State v. Culver, 65 Mo. 607; Kansas City v. Smith, 238 Mo. 323, 336; Railroad v. Tatman, 149 Mo. 657; Railroad v. Smith, 170 Mo. 327; Railroad v. Baker, 183 Mo. 312. (2) If the present subway is required to be widened, then the city should be required to pay one-half the total expense thereof, because: (a) The contract between the city and the Wabash, of September 14, 1887, is still in force and effect and a valid obligation of said city. Sec. 7, Charter, City of Moberly, Laws 1873, p. 326; Edwards v. Kirkwood, 147 Mo. App. 599; 3 McQuillan, Mun. Corp., secs. 1167, 1179 and 1255. (b) Under the facts and circumstances of this case, it is equitable and just that said city be required to pay one-half the cost of the proposed improvement.

*Alex Z. Patterson, James D. Lindsay, W. B. Stone* and *Hunter & Chamier* for respondent.

(1) The jurisdiction of the Public Service Commission is not limited to grade crossings, but it embraces every

271 Mo.—18

crossing of a street or highway by a railroad, and is commensurate with the subject to be dealt with. The commission has the exclusive power to prescribe the manner and terms of installation, operation, maintenance, apportionment of the expense, use and protection of each crossing of a street by a railroad; to alter or abolish any such crossing; to require a separation of grades at any such crossing heretofore or hereafter established; and to prescribe the terms upon which such separation shall be made, and the proportions in which the expense of the alteration or abolition of such crossings or the separation of such grades shall be divided between the railroad or street railroad corporations affected, or between such corporations and the State, county, municipality or other public authority in interest. Sec. 50, Public Service Commission Act, Subdiv. 2, Sec. 2, Subdiv. 6, Sec. 16, Subdiv. 1 and 3; State ex rel. v. Public Service Comm., 130 App. Div. (N. Y.) 335. (2) The alleged contract between the city and the Wabash Western Railway Company is a nullity. The city can make no contract except it be within the scope of its powers or expressly authorized by law. It was the common law and statutory duty of the railway companies to construct and maintain a suitable and convenient crossing, and the city was not authorized to contract to aid the railway companies in the performance of their duty. State ex rel. v. Railroad, 86 Mo. 13; Sec. 807, R. S. 1879; Secs. 3049, 3142, R. S. 1909; 2 Elliott, Roads and Streets, sec. 1056; 3 Elliott, Railroads, sec. 1105; 1 Elliott, Roads and Streets, 48; Snow v. Deerfield Township, 78 Pa. 181; Newton v. Railroad, 66 Iowa, 422; State ex rel. v. Railroad, 98 Minn. 380, 28 L. R. A. (N. S.) 298; State ex rel. v. Railroad, 80 Minn. 108; Sec. 6, Constitution of Missouri. The contract being made for a purpose not within the city's powers, and not authorized in accordance with the statute, was void, *ab initio,* and there can be no ratification of it. Savage v. Springfield, 83 Mo. App. 323; Perkins v. School District, 99 Mo. App. 483; Morrow v. County, 189 Mo. 610; Inhabitants v. Mfg. Co., 39 Mo. App. 264; Bell v. Kirkland, 102 Minn. 213, 13 L. R. A. (N. S.) 293; Bank v. Goodhue, 120 Minn. 362, 43 L. R. A. (N. S.) 84; Traction

Co. v. Minneapolis, 124 Minn. 351, 50 L. R. A. (N. S.)
143. Regardless of the foregoing considerations, it is
clear that the contract between the city and the Wabash
Western Railway Company could not prevent nor control
the exercise of the police power of the State over the sub-
ject dealt with in the contract. The Wabash Western Rail-
way Company, and the city in its proprietary capacity, in
undertaking by contract to assume reciprocal obligations
upon a subject involving the public safety and convenience,
could not affect the paramount right of the State to pre-
scribe the duties of each of the parties to said contract in
relation to that subject. Railroad v. State ex rel., 208 U.
S. 583; Railroad v. Minneapolis, 232 U. S. 430; Tobacco
Co. v. St. Louis, 247 Mo. 374; Kansas City v. Railroad,
102 Mo. 633; Milwaukee v. Railroad Comm., 155 N. W.
948; Railroad v. Connersville, 218 U. S. 336. (3) There was
no abandonment of Rollins Street outside the subway
proper by the city to the railway companies for the use of
the railways and for the purpose of giving title to the rail-
way companies. This is true because the contract was a
nullity. Moreover, it is manifest, both from the language
of the contract, if it is considered at all, and from the use
to which nearly all of the said street is put, that the use
contemplated was a public use—a use connected with and
necessary to the maintenance of the subway itself. (4)
The commission has the power to alter the present con-
dition of the crossing by requiring existing structures to
be replaced by structures adapted in size and construc-
tion to the demands of public necessity and convenience
at the present time. The common law and statutory duty
of the railway companies to maintain safe and convenient
crossings of highways, keeps pace with changed conditions
and must adapt itself to the necessities and convenience
of the public. This duty of the companies, and this power
of the commission, are continuing and co-extensive. Sec.
50, subdivision 2, Public Service Commission Act; Tobacco
Co. v. St. Louis, 247 Mo. 374; Railroad v. Illinois, 200 U.
S. 561; Indiana ex rel. v. Railroad, 83 Fed. 284; State ex
rel. v. Railroad, 35 Minn. 131; Railroad v. Bristol, 151 U.
S. 556; Railroad v. Chicago, 166 U. S. 226; Railroad Co. v.

Nebraska, 170 U. S. 57; State ex rel. v. Railroad, 98 Minn. 429. (5) The fact that the existing structures are strong enough to bear the railway traffic safely and would probably last for several years, is not determinative of the issue presented. It leaves out of consideration the essential element of public safety and convenience. (6) The receiver is subject to the orders of the commission, without it being necessary to secure the consent of the Federal court by which he was appointed. Section 2, subdiv. 8, Public Service Commission Act; Secs. 65 and 66, Federal Judiciary Code; State ex rel. v. Public Service Comm., 192 S. W. 86; United States v. Harris, 177 U. S. 305; Erb v. Morasch, 177 U. S. 584; Steel Co. v. Railway, 157 Fed. 445; Railroad v. Russell, 115 Ill. 52. (7) The findings and orders of the Public Service Commission are presumed to be lawful and reasonable. The court will not reverse the orders of the Commission, unless they show arbitrariness, and a disregard of the material rights of the railway companies. Railroad v. Jacobson, 179 U. S. 287; Railroad v. North Carolina, 206 U. S. 224; Railroad v. Minnesota, 186 U. S. 257; State v. Public Service Comm., 137 Pac. 136; Interstate Commerce Comm. v. Railroad, 218 U. S. 88; Morgan Co. v. Railroad Comm., 33 So. 220; In re Brook Park, 140 N. W. 771; People ex rel. v. McCall, 219 N. Y. 84.

WILLIAMS, J.—This proceeding was originally instituted before the Public Service Commission by the city of Moberly, asking the Public Service Commission to require the Missouri, Kansas & Texas Railway Company and the Wabash Railway Company to bear a portion of the expense in constructing a subway at the Rollins Street crossing of said railway companies' tracks in said city of Moberly. Upon a hearing, the Public Service Commission ordered the subway to be constructed at an estimated cost of $44,700, and apportioned the cost of the same as follows: to the Wabash Railway Company, $18,246; to the Missouri, Kansas & Texas Railway Company, $14,759; to the city of Moberly, $11,695.

Upon *certiorari* the order of the Public Service Commission was reviewed and affirmed by the circuit court of Randolph County. Thereupon each of said railway companies appealed to this court. The appeals were separate. The appeal of the Missouri, Kansas & Texas Railway Company et al. is numbered 20061 in this court, and the appeal of the Wabash Railway Company is numbered 20088. Since both appeals involve the same record, and practically the same legal propositions, they were argued together in this court and treated as consolidated, and we will so treat them in this opinion. A sufficient understanding of the issues and facts involved may be had from the following excerpts from the opinion of the Public Service Commission:

"The amended complaint charges that the street crossing situate under the tracks of the defendant railroad companies at Rollins Street, in the city of Moberly, is wholly inadequate to accommodate the public in the use of the street, in that the street crossing is not of sufficient width; that it is so defectively constructed and maintained as to permit dirt and cinders and water to accumulate thereon to the annoyance of the public; that the undercrossing as now maintained was constructed thirty years ago and is not sufficient to accommodate the present use of the same by the public. Complainant asks that defendants be required to erect and maintain a crossing at Rollins Street that will reasonably accommodate the public in the use of the street. . . .

"The substance of the answer of the Wabash Railway Company is that the grades of the street and railway crossing at Rollins Street were separated in 1887 at the joint expense of the city and Wabash Western Railway Company, in pursuance of a contract between the Wabash Western Railway Company (the predecessor in title of the defendant Wabash Railway Company), whereby it was agreed that a subway or tunnel should be built at Rollins Street beneath the railroad tracks at the joint expense of the city and said railway company; that the city should maintain the subway and keep it in repair and should it become necessary to change or repair the railroad bridge

over the subway it should be done by mutual consent of the city and said railway company or its assigns, the city and railway company each to pay one-half the cost. Defendant averred that the city had by the terms of said contract abandoned all the remaining part of Rollins Street not included in the subway; that defendant has been ready to perform the work of widening the subway at Rollins Street, provided complainant would pay one-half of the cost as provided by the contract.

"Charles E. Schaff, receiver of the Missouri, Kansas & Texas Railway Company by appointment of the United States District Court for the Eastern Division of the Eastern District of the State of Missouri, filed answer denying the allegations of the complaint and averring that the commission had no power to make him a party to the proceeding or to direct an order against him as receiver, for the reason that the property of said railway company was through him, as receiver, subject to the sole control of the said United States District Court.

"The answer of the Missouri, Kansas & Texas Railway Company avers in effect that by the terms of the contract set forth in the answer of the Wabash Railway Company the city of Moberly agreed to pay one-half of the cost of constructing a permanent crossing at Rollins Street and that the defects therein complained of, if any, are due to the failure of the city to carry out that agreement; that the commission has no power to require the street crossing to be widened; and further, that defendant's property is in the hands of a receiver and it is not now operating a railroad.

"The city of Moberly has fifteen thousand inhabitants. It was organized under a special act of the Legislature in 1873 and continued under that act until 1889, at which time the city became a city of the third class as provided by the statutes of this State, and has so continued.

"The general direction of right of way and tracks of the Wabash Railway Company through the city of Moberly is north and south. The right of way and tracks of the Missouri, Kansas & Texas Railway are almost parallel to the Wabash Railway and a short distance east

thereof.   About five thousand people reside east of the railroad tracks.   The crossings now maintained at grade across the railroad tracks of defendants from the east part of the city to that west of the railroad tracks are at Coates Street, Wightman Street, Carpenter Street and McKensie Street.

"At the place of crossing the railroad tracks of the defendants by each of the streets above named, except Mc-Kensie Street, there are at least five railroad tracks. Watchmen are kept at the Coates and Wightman Street crossing to protect the public.   Wightman Street is the first crossing south of Rollins Street and is one-eighth of a mile distant therefrom.   The Carpenter and McKensie Street crossings are south of Wightman Street.   Train movements are frequent on the tracks of defendants at all the street crossings.

"The crossing receiving the largest use by the public is the crossing at Coates Street, which is one block north of Reed Street, where the Union Passenger Depot of the defendants is located.   Rollins Street is one block south of Reed Street.   It is eighty feet in width and is one of the main streets of the city.

"Sturgeon Street extends north and south and is crossed by Rollins Street at the west line of the right of way of the Wabash Railway Company.   Rollins Street intersects Moulton Street immediately east of the railroad tracks.

"On the 14th day of September, 1887, the city of Moberly entered into a contract in writing with the Wabash Western Railway Company for separating the grades at the Rollins Street crossing.   By said contract the parties thereto agreed that the city and railroad company should each pay one-half the cost and expense of excavating for a tunnel under said railway company's tracks at Rollins Street and for erecting a wooden bridge over the same for use by the railway company.   Under the terms of the contract the city was to take control and management of the tunnel as of its other property and keep it in good repair except the bridge and its supports. It was also agreed that the railway company or its as-

signs shall have control of the bridge, and should the bridge or its supports be changed in workmanship, design or material, it shall be by the mutual consent of the city and railway company, or its assigns; in either event the railway company or its assigns and the city shall each pay one-half of the cost of said repairs or changes in the construction thereof. The contract further provided that upon completion of the tunnel the city would permit the Wabash Western Railway Company to fence or close in Rollins Street on grade with its tracks and that the city would abandon the street and sidewalks on grade with the tracks on Rollins Street. The contract was made on behalf of the city by the mayor. There was no showing that it had been authorized by ordinance.

"The tunnel or subway for an undercrossing at Rollins Street and the bridge above the same were constructed in pursuance of the contract above named and the cost was paid as provided therein. The evidence does not show at what time the overhead structures at Rollins Street were erected by the Missouri, Kansas & Texas Railway Company. At the time of the hearings and long prior thereto said railway company maintained two separate overhead structures for a main track and a switch track at Rollins Street, a short distance east of the Wabash bridge over Rollins Street. The bridge of the Wabash Railway Company supports four tracks and is about sixty feet in width. It is across Rollins Street at a right angle. The other structures cross the street obliquely. At the time of the hearings a roadway sixteen feet in width, paved with brick, had been built by the city on Rollins Street through the tunnel or subway. About one year prior to the first hearing in the case the railroad companies built a cement sidewalk five feet in width through the tunnel on the north side of Rollins Street. The overhead structures are much the same in the manner of their construction and are supported by wooden piling at each end. There is a row of piling between the sidewalk and roadway, under the bridge of the Wabash Railway Company.

"The overhead structures are reasonably safe for carrying the trains of the railroad companies, and with repairs may be used for five or six years. The bridge of the Wabash Railway is less than ten feet above the roadway. The Missouri, Kansas & Texas Railway bridges are eleven feet above the roadway. The parts of the bridges over the roadway are floored with boards, the parts over the sidewalk have been covered with sheets of metal to protect pedestrians from oil and dirt from passing trains. The grade of Rollins Street going east descends toward the tunnel and carries water to a point near the main track bridge of the Missouri, Kansas & Texas Railway, where the city has provided a pipe to carry it away. The testimony shows that the pipe is too small to carry away the water flowing into the tunnel. Water is frequently on the pavement in the tunnel, interfering with the use of the street by the public.

"The evidence shows a large use of the Rollins Street subway by both pedestrians and vehicles. The city produced a witness who had observed and counted the number of persons traveling on the street at the crossing on the 13th, 14th and 15th days of April, 1916. The witness testified to the use of the subway during that period by twelve hundred and seventy-eight vehicles carrying seventeen hundred and sixteen persons, and by twenty-eight hundred and seventeen pedestrians.

"Complainant offered many witnesses for the purpose of showing that the tunnel as now maintained was not sufficient for the reasonable accommodation of the public. The objections thus presented were lack of drainage, earth falling from embankments at the ends of the bridges onto the sidewalk and roadway, oil and cinders falling from trains onto persons passing beneath the tracks, noise from passing trains owing to open construction of the floors of the bridge, insufficient vertical clearance of the bridges above the roadway, and lack of width of the roadway.

"We find that the substantial defects in the tunnel or subway as now maintained are the narrow roadway, insufficient vertical clearance, lack of abutments to pre-

vent earth and water from the embankments from falling in the sidewalk and roadway, and the failure to provide floors in the bridges that will prevent oil, cinders or dirt from falling upon travelers. Sidewalks should be provided at each side of the roadway.

"Since 1906 the alterations of the structure at Rollins Street has been the subject of negotiations between the city and the Wabash Railway Company and also between the city and the Missouri, Kansas & Texas Railway Company. The city has insisted upon new structures which the railroad companies have refused to build unless the city would pay one-half of the cost thereof."

At the request of the Public Service Commission, the railway companies submitted plans for the proposed structure. These plans were submitted, however, with the express understanding that in so doing the railway companies did not waive any right which they might have to object to any order that the Public Service Commission might make in the premises.

"The plan filed by the Wabash Railway Company offers a structure of concrete and steel, with a roadway of twenty-four feet and sidewalk at each side of eight feet in width. The bridge to be twelve feet above the roadway and to be supported by concrete abutments located at each end and piers located at curb lines. . . . The plan filed by the receiver of the Missouri, Kansas & Texas Railway provides for structures of the same type as prescribed by the plans of the Wabash Railway Company."

The plan submitted by the railway companies was the one later adopted by the Public Service Commission. In apportioning the cost the opinion of the Public Service Commission states:

"The city and defendants should each pay a part of the expense of the proposed improvement at Rollins Street.

"The Wabash Railway Company should bear the cost of the subway necessary to carry its tracks over Rollins Street, and the cost of removing old sidewalks and old pavement, and the cost of street grading from the east right of way line of the Wabash Railway Company to ap-

proximately 100 feet west of the center line of Sturgeon Street and necessary retaining walls within above limits. The estimated cost of work outlined above is $18,246.

"The Missouri, Kansas & Texas Railway Company and the receiver should bear the cost of the two subways necessary to carry its tracks over Rollins Street, and the cost of removing old sidewalks and old pavement, and the cost of street grading from the east right of way line of the Wabash Railway Company to the west line of Ault Street, and necessary retaining walls within above limits. The estimated cost of this work is $14,759.

"The city of Moberly should bear the cost of the balance of the work, which consists of a twenty-four foot brick pavement, two eight-foot concrete sidewalks, and curbs from the west line of Ault Street to Sturgeon Street, and a sixteen-foot brick pavement from Sturegon Street to approximately 100 feet west of center line thereof, two catch basins at west portal of Wabash subway, two catch basins at east portal of east Missouri, Kansas & Texas Railway subway, necessary twelve-inch pipe connections between catch basins and under subways to connection with thirty-inch sewer, and thirty-inch sewer along south side of Rollins Street from east Missouri, Kansas & Texas Railway subway to 'Lockley's Hollow.' The estimated cost of above work is $11,695."

I. It is contended by both appellants that the Public Service Commission is without power under the statutes to make the order now sought to be reviewed. In this behalf it is insisted that the power of the Commission in the matter of regulation of crossings is limited to *grade* crossings.

Subways.

We are unable to agree with this contention.

Sub-section 2 of section 50, Public Service Act, Laws 1913, page 589, provides:

"*The Commission shall have the exclusive power to determine and prescribe the manner,* including the particular point of crossing, *and the terms of* installation, *operation, maintenance, apportionment of expense, use and protection* of each crossing of one railroad by another

railroad or street railroad, and of a street railroad by a railroad, and of *each crossing of a public road or highway by a railroad* or street railroad and of a street by a railroad or *vice versa,* so far as applicable, *and to alter* or abolish *any such crossing,* and to require, where, in its judgment, it would be practicable, a separation of grades at any such crossing heretofore or hereafter established, *and to prescribe* the terms upon which such separation shall be made and *the proportions in which the expense of the alteration* or abolition *of such crossings* or the separation of such grades *shall be divided between* the railroad or street railroad corporations affected or between *such corporations and* the State, county, *municipality* or other public authority in interest.'' (Italics ours.)

The Supreme Court of Vermont in the case of Libby v. Canadian Pac. Ry. Co., 82 Vt. 316, said:

''A crossing of roads, in the primary and natural sense of the word, is an intersection of them in the same plane, and while an underpass is a structure which obviates the necessity of a crossing, *in a broader sense, the word covers all the means by which the traveler passes from one side to the other of an obstructing line.''*

In the cases of Wheeler v. Rochester & S. Ry. Co., 12 Barb. 227, l. c. 232, and St. Paul & S. C. R. R. Co. v. Murphy, 19 Minn. 500, l. c. 522, the term ''crossing'' was held to include all ''crossings from one side to the other of the railroad, whether by passing over or under the track.''

By reading in a connected way the above italicized portions of said statute, and considering the same in connection with the context, we think it becomes quite apparent that the commission is given the power to regulate and provide for the alteration and maintenance of *all* such crossings whether they be by subway, on grade, or overhead. The word ''crossing'' as used in the act is sufficient in scope to include all such crossings and we are of the opinion that the Legislature so intended. The very language of the act itself directs that: ''The provisions of this act shall be liberally construed with a view to the public welfare, efficient facilities and substantial justice

between patrons and public utilities.'' [Sec. 127, Public Service Commission Act, Laws 1913, p. 648.]

II. It is further contended that Rollins Street, originally eighty feet in width, is now only twenty-one feet in width; that the abandonment of the grade crossing in 1887 and the subsequent use by the public of only twenty-one feet thereof for such subway, amounts to an aban-

Abandonment of Street.

donment of the remaining portion of the original width of said street, so that as the matter now stands the commission is without power to require said subway to be widened and is without power to compel appellants to perform work beyond the boundaries of the present subway structure.

The plan of improvement contemplates a subway forty feet in width which includes a twenty-four-foot driveway for vehicles, with sidewalk eight feet in width on each side thereof. The present subway is twenty-one feet in width.

Without here undertaking to determine the power of the commission to exercise its power upon land beyond the limits of the street (because not necessary to a decision here), it is sufficient for the determination of the point here made to say that we are of the opinion that Rollins Street at said crossing is not limited to the width of the present subway structure. There is no showing made sufficient to warrant a holding that the intention of the city was to abandon, or that it did abandon, so as to exclude from future use, any portion of the original width of said easement as might, in the future, become convenient or necessary to be used in expanding the subway structure to accommodate the traveling public.

III. We are of the opinion that the order of the commission is not subject to the charge of being unreasonable or arbitrary. The situation here involved is

Arbitrary and Unreasonable Order.

quite different from the situation discussed in the cases of State ex rel. v. K. C. Terminal Ry. Co., 260 Mo. 489; American Tobacco Co. v. St. Louis, 247 Mo. 374; Railroad v. Public

Service Commission, 266 Mo. 333, and other cases cited by appellant.

Moberly is a city of approximately 15,000 inhabitants. The tracks of the two appellant railway companies cut the city almost in halves—leaving about six thousand people to the east of the tracks and nine thousand people on the west side. The subway crossing at Rollins Street is the only means of passing from one side of the town to the other without going across the numerous tracks at grade. The commission found (and we think there is an abundance of testimony to support the finding) that the present size of the subway is inadequate to accomodate the traffic at that point. It further appears that the construction of the present subway is such as to allow dirt and oil to drop through on the persons using the subway and that the open construction of the subway causes horses to become frightened from the noise of the passing of the trains overhead. It is true the commission finds that the structure is of ample strength to support passing engines, and that with repairs it might be used for that purpose for five or six years, but the safety of passing trains is only one of the elements to be considered in matters of this kind. It is not the sole or controlling element. The convenience and necessities of the traveling public using Rollins Street must likewise be considered. The *plan* of improvement adopted is not claimed to be extravagant or unreasonable. In fact the very plan adopted is the one supplied by the appellant companies. And while they claim that no improvement should be required at this time, yet, as we understand the matter if an improvement is to be made, they make no complaint as to the details of the plan adopted.

The whole situation carefully considered, we are unable to say that the order is unreasonable or arbitrary.

IV. It is contended by the appellant Wabash Railway Company that by virtue of a contract entered into between it and the city of Moberly in 1887, the city should have been ordered to pay one-half of the total expense of said proposed improvement. A description of the contract to which reference

Contract With City.

is here made will be found in the foregoing statement of facts.

Assuming (but without deciding) that the above mentioned contract was in fact duly executed as the law requires of contracts executed by a municipality, yet the contract cannot avail the appellant in this proceeding, for the reason that such a contract is void as against public policy in that, if held valid, it would amount to a limitation on the exercise by the State of its police power.

This exact point was passed upon by the Supreme Court of the United States in the case of Northern Pacific Railway v. Duluth, 208 U. S. 583. In that case a contract was entered into between the railroad company and the city of Duluth which provided for the construction of a viaduct at a point where one of the city's streets crossed the railroad. The initial cost was paid, $50,000 by the railroad and $23,000 by the city. The contract provided that the city, for a period of fifteen years, should maintain the part of the bridge over the railroad's right of way, and that the city should perpetually maintain the approaches. Later the viaduct and the approaches became dangerous for public use and the city under the exercise of a delegated power from the State undertook to require the railroad company at its own expense to make the needed improvement. The city by mandamus proceeding undertook to enforce its order. The railroad company pleaded the contract as a defense. The trial court granted the city the relief prayed. Upon appeal the State Supreme Court affirmed the judgment. [98 Minn. 429.] Upon error to the Supreme Court of the United States the judgment was affirmed, the court saying:

"The result of these cases [citing] is to establish the doctrine of this court to be that the exercise of the police power in the interest of public health and safety is to be maintained unhampered by contracts in private interests, and that uncompensated obedience to laws passed in its exercise is not violative of property rights protected by the Federal Constitution. In this case the Supreme Court of Minnesota has held that the charter of the company as well as the common law required the railroad, as to

existing and future streets, to maintain them in safety, and to hold its charter rights subject to the exercise of the legislative power in this behalf, and that any contract which undertook to limit the exercise of this right was without consideration, against public policy and void. This doctrine is entirely consistent with the principles decided in the cases referred to in this court. But it is alleged that at the time this contract was made with the railroad company it was at least doubtful as to what the rights of the parties were, and that the contract was a legitimate compromise between the parties which ought to be carried out. But the exercise of the police power cannot be limited by contract for reasons of public policy, nor can it be destroyed by compromise, and it is immaterial upon what consideration the contracts rest, as it is beyond the authority of the State or the municipality to abrogate this power so necessary to the public sat

The same doctrine is also announced in the case of American Tobacco Co. v. St. Louis, 247 Mo. 374, l. c. 433.

V. It is contended by appellant, the receiver of the Missouri, Kansas & Texas Railway Company, that the commission was without authority to make said order as to him because, although he was notified and appeared and answered, the complainant failed to obtain from the Federal court having jurisdiction of the receivership, consent to proceed against said receiver.

**Consent of Federal Court.**

We know of no authority which requires that the consent of the court having jurisdiction of the receivership must first be had in order that the Public Service Commission of the State wherein the railroad is located, may have the authority to proceed in the promulgation of its orders in the exercise of the police power of the State. Counsel have not cited any such authority and we are not aware of any reason making such a rule necessary. By sub-section 8 of section 2 of the Public Service Commission Act, (Laws 1913, p. 558), receivers of railroads are expressly included within the scope of said act.

Section 65 of the Federal Judicial Code (4 Fed. Stat. Ann., p. 386; 1 U. S. Comp. St. 1913, p. 435) provides:

"Whenever in any cause pending in any court of the United States there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the State in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof. Any receiver or manager who shall wilfully violate any provision of this section shall be fined not more than three thousand dollars or imprisoned not more than one year or both.'"

Under a very analogous situation the Supreme Court of Alabama held that the consent of the appointing court was unnecessary. [Railroad Commission of Alabama v. Alabama Great Southern R. R. Co., 185 Ala. 354.]

We are of the opinion that the consent of the court, appointing the receiver, to permit said receiver to be made a party to the proceeding before the Public Service Commission, was not a necessary prerequisite to the right of the commission to enter its said order and the contention therefore is disallowed.

The judgment is affirmed.

*Graves, C. J., Walker, Faris* and *Blair. JJ.*, concur; *Bond, J.*, concurs in paragraph 3 and in the result; *Woodson, J.*, not sitting.