STATE EX REL. ALTON RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.—70 S. W. (2d) 61.

Division One, March 14, 1934.

*Charles M. Miller* for appellant.

*D. D. McDonald, G. C. Murrell, Fred A. Boxley* and *Rufus Burrus* for respondent.

HYDE, C.—This case, coming to the writer by reassignment, is an appeal by the Alton Railroad Company from the judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission requiring the railroad to contribute to the cost of a subway. In 1931, Jackson County made application to the commission authorizing the separation of the grade, where Sterling Avenue, a north and south street between Kansas City and Independence, crossed the track of the Alton Railroad, and apportioning the cost thereof. The answer of the railroad made the same allegations as were made in its answer in State ex rel. Alton Railroad Co. v. Public Service Comm., 334 Mo. 985, 70 S. W. (2d) 52, decided concurrently herewith.

The county proposed that a subway be built, the estimated cost of which was $27,181, to provide an underpass for a new 18-foot concrete slab highway, constructed as a part of its $10,000,000 road program, over Sterling Avenue from Sugar Creek, on the Missouri River, south across U. S. Highway 24 and the main trafficways between Kansas City and Independent to Blue Ridge Boulevard, making a connection with U. S. Highway 40 and U. S. Highway 50. The northern part of the old road was macadam and the southern part was oiled earth. This new road traversed a residential district between Kansas City and Independence, about two miles east of the east boundary of Kansas City, which had been developed in recent years. It was shown that there was no through north and south highway in that area; that the present traffic over the crossing was mostly local; that the new road would provide a needed trafficway through the territory; that greatly increased travel was to be expected thereon; and that the old road crossed the Alton Railroad's single main line track on a grade crossing at a point where the topography was such that a crossing by subway was practicable. It was also shown that the road approached the present crossing from the south on a ten per cent grade; that because of trees and other obstructions the view of the track to the west was only about 300 feet, 100 feet south of the crossing, while at that point the view to the east was only 500 feet; and that the view to the west was only about 400 feet, up to within fifty feet south of the track, although twenty-five feet south of the crossing it was possible to see about 2,000 feet or more each way. The sight distance approaching from the north was greater, especially to the east. Passenger trains going west passed the crossing at about fifty miles per hour while freight trains going in that direction crossed at about thirty-five miles per hour. Trains traveled at a decreased speed going east, which was up-grade. There were six passenger trains and from four to ten freight trains per day. Traffic counts indicated an average of more than 600 automobiles, over the present crossing daily, between six A. M. and ten P. M. The railroad maintained an automatic crossing bell there.

The commission found that the construction of the new road would invite considerable additional traffic and that, because of the limited distances from which trains could be seen when vehicles were from 75 to 100 feet from the track, a subway should be constructed. It ordered the subway built, and that the railroad should pay half of its cost and maintain it. The railroad contends that this order is arbitrary, unjust and unreasonable, but does not challenge the authority of the commission to make it. The railroad further contends that an automatic flashing light signal would be all that was necessary to make the crossing safe even on the new road with the increased traffic. Many decisions of this court have dealt with similar situations and contentions. We hold that the order of the commission authorizing the construction of the subway and apportioning one-half of the cost to the railroad is supported by substantial evidence, is not unreasonable, arbitrary and unlawful and does not violate constitutional provisions concerning due process of law and equal protection of the law. [See State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Comm. (Mo.), 62 S. W. (2d) 1090, and cases cited; State ex rel. Chicago & Great Western R. Co. v. Public Service Comm., 330 Mo. 729, 51 S. W. (2d) 73, certiorari denied 287 U. S. 641, 53 Sup. Ct. 89, 77 L. Ed. 555.]

In support of its contention in this case, which it likewise made in the other three cases, 334 Mo. 985, 992, 995, 70 S. W. (2d) 52, 55, 57, decided concurrently herewith, that it should not pay any part of the cost of the improvements because of its financial condition, the railroad offered considerable testimony both oral and documentary, the purport of which was stated in the commission's report as follows:

"Considerable testimony was introduced by the Railroad Company bearing on the financial condition of the Company. Defendant's Exhibit No. 32 is a cash statement of the Company to show that on December 31, 1931, the Company had available $394,000 to meet its obligations. Unpaid vouchers in hands of the Company at that time were $335,213. Defendant's Exhibit No. 33 is a statement showing the principal obligations of the Company for the year 1932 over and above operating expenses and shows that during the year 1932 the Company is obligated for payment to the amount of $5,322,433.11. Defendant's Exhibit No. 34 is a statement of the income account of the Company for the period July 19 to December 31, 1931, and shows a deficit of $682,410. This condition exists in the face of the material decrease in the number of employees now on the payroll of the Company. Defendant's Exhibit No. 35 is a statement showing the number of employees in service each month for the years 1927, 1928, 1929, 1930 and eleven months of 1931, and shows that the total number of employees has decreased from 7,891 in January, 1927, to 5,352 in November, 1931."

In addition to the above facts it was shown that the railroad's

salaries and wages had been or were to be cut about ten per cent; that because of its financial condition only thirty miles of rails had been relaid in 1930 and only seventeen and one-half miles of rails had been relaid in 1931, although the average rail relay for the twenty years preceding 1930 was sixty-five miles; that many miles of replacement of track ballast and crossties had been deferred; that a reduction of about thirty-five per cent had been made in the forces of the maintenance department; and that the Missouri State Highway Commission, recognizing that railroads did not have the funds with which to contribute to viaducts and underpasses, had limited their requests to about one-third of their usual number and had informed the railroad that it would only be asked to participate in one project for the year 1932. It was, however, also shown that the Alton Railroad Company was a new corporation with a capital of $25,000,000, furnished by the Baltimore & Ohio Railroad Company, to enable it to buy the property of the old Chicago & Alton Railroad Company during the year 1931, at a receiver's sale. The new company had only operated the railroad since July 19, 1931. It was said that it had a bonded indebtedness of $45,350,000, which were refunding bonds at three per cent interest. It was also said that the Baltimore & Ohio had also purchased part of the bonds of the old Chicago & Alton Company at twenty-three cents on the dollar and others at eighty cents. The commission's conclusion, about the proposition that the order should be refused because of the railroad's financial condition, was as follows:

"The Commission is quite aware of the strained financial position in which the Company finds itself and is sympathetic to the pleas that the proposed projects be postponed until such time as the Company may assume its share of the cost without finding it too great a burden. We feel, however, that when our jurisdiction is invoked, we cannot refuse to act because of the financial effect on the defendant Railroad. The welfare of the public is paramount. The County can, perhaps, postpone the collection of the charges against the Railroad Company until some future and more favorable time."

■ It is apparent that the commission did not consider that the cost of these projects, which it required the railroad to pay, would stop its operation or force it into bankruptcy. It is also apparent from the record that no detailed investigation into the financial condition or structure of the new Alton Railroad Company was attempted at the hearing, but rather, that the railroad's argument was based upon its showing that it had not yet shown a profit in the short time it had owned the property; that it had many obligations coming due during the next year; and that the general condition of railroads and railroad business prospects, as well as financial depression of all industries, did not promise immediate earnings sufficient to meet all obligations. The right of this State to order improvements which are necessary for the public safety, regardless of the effect they might have upon

the railroad's financial condition, cannot be questioned. The Supreme Court of the United States, in Erie Railroad Co. v. Public Utility Commissioners, 254 U. S. 394, 41 Sup. Ct. 169, 65 L. Ed. 322, said:

"If it reasonably can be said that safety requires the change, it is for them to say whether they will insist upon it, and neither prospective bankruptcy nor engagement in interstate commerce can take away this fundamental right of the sovereign of the soil."

Concerning the argument that to require the elimination of all grade crossings would bankrupt the railroad, the Supreme Court there further said:

"That the states might be so foolish as to kill a goose that lays golden eggs for them has no bearing on their constitutional rights. . . . Intelligent self-interest should lead to a careful consideration of what the road is able to do without ruin, but this is not a constitutional duty." [See, also, Mo. Pac. Ry. Co. v. Omaha, 235 U. S. 121, 35 Sup. Ct. 82, 59 L. Ed. 157; C., M. & St. P. Ry. Co. v. Minneapolis, 232 U. S. 430, 34 Sup. Ct. 400, 58 L. Ed. 671; as to due process of law in determination of question, see Southern Ry. Co. v. Virginia, 54 Sup. Ct. 148.]

Were it shown that the immediate result of an order of the Public Service Commission would be to force the railroad into bankruptcy, we, perhaps, might properly hold that such order was an unreasonable one for the commission to make, even though the State had the constitutional power to make it. However, no such showing was made in this case and the burden of proof, under the statute (Sec. 5247, R. S. 1929) and under our decisions, was upon the railroad to show that the order was unreasonable because of its effect upon its solvency, just as it had the burden of proof to show the order unreasonable for any other reason. Much of the evidence here related to the financial condition of the old Chicago & Alton Company which, of course, was bad since it had gone into receivership and its property had to be sold at public auction. The Baltimore & Ohio was able to purchase some of its bonds as low as twenty-three cents on the dollar. Neither the value, character, nor condition of the property acquired, by the new company at the receiver's sale, was shown. Neither was it shown that the obligations assumed, maturing in the year 1932, could not be refunded on a long-time basis, nor that the company was unable to obtain such financing as it needed. The deficit at the end of 1931 may have been partly due to the payment of a whole year's taxes (and other unusual expenses of a new company commencing business) with the earnings of less than six months. The showing made was not sufficient to sustain the burden of proof upon the proposition that the commission's order was unreasonable because of its effect upon the solvency of the company or its ability to continue in business. The report of the commission shows that it did consider the ability of the railroad to pay

at once and was not requiring immediate payment of its proportion of the cost of the projects, at the time of doing the work. The commission has authority to extend the time for compliance with its orders (Sec. 5232, R. S. 1929) and would no doubt do so upon a proper showing.

The judgment is affirmed. *Ferguson* and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.