STATE EX REL. ALTON RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION.—70 S. W. (2d) 52.

Division One, March 14, 1934.

*Charles M. Miller* for appellant.

*D. D. McDonald, G. C. Murrell, Fred A. Boxley* and *Rufus Burrus* for respondent.

HYDE, C.—This case, coming to the writer by reassignment, is an appeal by the Alton Railroad Company from the judgment of the Circuit Court of Cole County affirming an order of the Public Service Commission requiring the railroad to contribute to the cost of a bridge. In 1931, Jackson County made application to the commission for an order authorizing the construction of a concrete bridge, over the track of the railroad on Noland Street road about a mile south of Independence, and apportioning the cost thereof. The estimated cost of the bridge was $5,536.30. The answer of the railroad stated that the present bridge was reasonably adequate; that if a new viaduct was to be constructed the county should pay the entire cost; that assessing any of the cost against the railroad would constitute an arbitrary appropriation of its property without due process of law and a denial of the equal protection of the laws, in violation of both the Missouri and Federal Constitutions; that defendant, because of the financial depression, did not have sufficient earnings to be able to pay any of the cost; and that, if defendant should be required to contribute to the cost, the matter should be postponed until

the present financial depression is over and the revenue of the railroad increased so as to make it reasonably able to contribute thereto.

The county was building a new system of roads, financed by bond issues, aggregating $10,000,000. As a part of this program, an 18-foot concrete highway was being constructed, from Independence south almost nine miles, crossing U. S. Highway 40 and connecting with U. S. Highway 50 northwest of Lee's Summit, parallel to and four to five miles east of the eastern limits of Kansas City. It connected at Independence with a paved road running northeast to Courtney, where there was a bridge across the Missouri River. Near Independence this concrete road was to replace macadam pavement but over most of the distance the old road was an oiled earth road. The macadamized part of the old road crossed the single track main line of the railroad on a bridge, constructed of treated timber by the railroad in 1928, to replace an older structure. It was estimated that the probable life of the new treated timber bridge was from twenty-five to thirty years. The plans for the new concrete road, contemplating a higher grade with greater clearance above the railroad track and also eliminating certain curves, required a bridge on a different level and alignment than the wooden structure. The upper of the two layers, of the bridge flooring, was in bad repair and had been ordered replaced by the railroad. Both the present and the proposed bridge were approximately twenty feet in width. There was evidence that the present bridge could only safely carry a load of 100 pounds per square foot uniformly distributed, which about equaled the load of a 7-ton truck. The proposed bridge was designed to carry the load of a 20-ton truck. The county's engineers were of the opinion that the new road would become one of its most important north and south traffic arteries; that the present bridge did not have the strength to be an adequate bridge for such a trafficway; that it would be much more expensive to build a new bridge after the construction of the highway; and that to construct the highway without a new bridge would create a dangerous condition because the present bridge would be out of alignment with and on a lower level than the new pavement. The evidence of the railroad disputed these propositions.

The commission found that the location of the new road was changed to eliminate curves so as to promote the safety of the traveling public; that this change required a relocation of the bridge; that to relieve the railroad of keeping up the present structure, which required constant maintenance, would result in considerable saving; and that to build the new road at one time and replace the bridge at another would cost a considerable amount which could be saved by doing both at the same time. The commission ordered the new bridge built, apportioned twenty-five per cent of the cost to the railroad and required the county to pay seventy-five per cent thereof and to main-

tain the new bridge. The commission stated that it took into consideration the fact that the railroad had rebuilt the bridge so recently and reduced its apportionment because it had done so.

█ The basis of the railroad's first contention, that the commission's order requiring it to contribute to the cost of building a new bridge was beyond its power and authority and so arbitrary as to be in violation of due process and equal protection clauses of the State and Federal Constitutions. is that the commission had no authority in the matter at all because a grade crossing was not involved; because its bridge was there before the creation of the Public Service Commission: because. since there was no grade crossing to be eliminated. no element of safety was involved: and because. for the same reason, there could be no possible benefit derived by the company. The authorities do not sustain the proposition that the order violates the constitutional provisions suggested. [Erie Railroad Company v. Public Utility Commissioners. 254 U. S. 394. 41 Sup. Ct. 169. 65 L. Ed. 322: Missouri Pacific Ry. Co. v. Omaha. 235 U. S. 121. 35 Sup. Ct. 82. 59 L. Ed. 157: Northern Pacific Ry. Co. v. Puget Sound & Willapa Harbor Ry. Co.. 250 U. S. 332. 39 Sup. Ct. 474. 63 L. Ed. 1013: State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Comm. (Mo.), 62 S. W. (2d) 1090; State ex rel. St. Louis-San Francisco Ry. Co. v. Public Service Comm., 331 Mo. 438. 53 S. W. (2d) 868; State ex rel. Kansas City Term. Ry. Co. v. Public Service Comm.. 308 Mo. 359. 272 S. W. 957; Chicago. Rock Island & Pacific Railroad Co. v. Public Service Comm., 315 Mo. 1108, 287 S. W. 617.] Very similar contentions concerning the Commission's authority were passed upon by this court in State ex rel. Mo.-Kan. & Tex. Ry. Co. v. Public Service Comm.. 271 Mo. 270. 197 S. W. 56. where a railroad was ordered to contribute to the cost of widening a subway in the city of Moberly which had existed since 1887. This court. in its opinion, en banc, set out subsection 2 of Section 50 of the Public Service Act of 1913. now Section 5171, Revised Statutes 1929. with certain parts italicized, as follows:

"*The commission shall have the exclusive power to determine and prescribe the manner*, including the particular point of crossing, *and the terms* of installation, *operation, maintenance, apportionment of expenses, use and protection* of each crossing of one railroad by another railroad or street railroad, and of a street railroad by a railroad, and of *each crossing of a public road or highway by a railroad* or street railroad and of a street by a railroad or *vice versa*, so far as applicable, *and to alter* or abolish any such *crossing,* and to require, where, in its judgment, it would be practicable, a separation of grades at any such crossing heretofore or hereafter established, *and to prescribe* the terms upon which such separation shall be made and *the proportion in which the expense of the alteration* or abolition *of such crossings* or the separation of such grades *shall be divided be-*

*tween* the railroad or street railroad corporations affected or between *such corporations and* the State, county, *municipality* or other public authority in interest.''

The ruling of this court there, which disposes of this matter here, was as follows:

''By reading in a connected way the above italicized portions of said statute, and considering the same in connection with the context, we think it becomes quite apparent that the commission is given the power to regulate and provide for the alteration and maintenance of *all* such crossings whether they be by subway, on grade, or overhead. The word 'crossing' as used in the act is sufficient in scope to include all such crossings and we are of the opinion that the Legislature so intended.''

■ As to the railroad's contentions that the apportionment was unfair, unjust and unreasonable because there was no element of safety involved; because there could be no possible benefit to the railroad; because there was no reasonable necessity shown for the project; and because the present bridge was new and adequate, we have frequently ruled that upon such contentions that the question is not whether this court or the trial court would have made the same order upon the facts, but that the sole question is whether the order which the commission made was reasonable and lawful and that the burden of proof is upon the appellant to show that it is unreasonable and unlawful. [Sec. 5247, R. S. 1929; State ex rel. Wabash Ry. Co. v. Public Service Comm., 271 Mo. 155, 196 S. W. 369; State ex rel. City of St. Joseph v. Busby (Mo.), 274 S. W. 1067; State ex rel. Alton Transportation Co. v. Public Service Comm., 330 Mo. 1, 49 S. W. (2d) 614; State ex rel. City of Kirkwood v. Public Service Comm., 330 Mo. 507, 50 S. W. (2d) 114; State ex rel. Chicago & Great Western Ry. Co. v. Public Service Comm., 330 Mo. 729, 51 S. W. (2d) 73; State ex rel. Union Electric Light & Power Co. v. Public Service Comm., 333 Mo. 426, 62 S. W. (2d) 742.] We think that under the evidence, there was no showing that the commission's order was unreasonable upon any of the grounds stated. Noland Street road had crossed the railroad at this point for many years. The former wooden bridge had, according to the county's evidence, been ready to fall down for some years and in 1928 the present wooden structure was built. The county's evidence was that even the new bridge was a temporary proposition. ■ ■ Be that as it may, thereafter the county decided that a new system of county roads should be built and embarked upon its $10,000,000 road program. Noland Street road was being converted from a country neighborhood earth road, over about seven miles of its distance, to a modern 18-foot concrete slab trafficway, which would connect three recently constructed Federal Highways (U. S. 24, U. S. 40 and U. S. 50) converging toward Kansas City, and which would parallel the east

boundary of that city of almost 400,000 population at a distance of three to five miles. There is much in the record to disclose the growth of Jackson County in population and we may also take judicial notice of the United States census which shows the exact increase of population in Kansas City and the entire county for the last thirty years. [Carter County v. Huett, 303 Mo. 194, 259 S. W. 1057; State ex inf. Crow v. Evans, 166 Mo. 347, 66 S. W. 355; State ex rel. Martin v. Wofford, 121 Mo. 61, 25 S. W. 851; 23 C. J. 161, secs. 1987-88; 15 R. C. L. 1129, sec. 56.] These figures are as follows:

Jackson County (including Kansas City)     Kansas City Only
| 1900 | — | 195,193 | 163,752 |
| 1910 | — | 283,522 | 248,381 |
| 1920 | — | 367,846 | 324,410 |
| 1930 | — | 470,454 | 399,746 |

The census also shows the increase, from 1910 to 1920, was 29.7 per cent, and was, from 1920 to 1930, 27.9 per cent, and it shows a 1930 population of 771.2 per square mile, as compared with 603 per square mile in 1920. Evidence in the record shows that the greater part of this increased population, outside of Kansas City itself, has settled between the east limits of Kansas City and the new Noland Street trafficway. The bridge across the Missouri River near Courtney, north of Independence, to which this new highway will lead, the other county roads under construction, and new State highways to be built, all point to the increasing travel, which this highway will likely carry. In view of these conditions, a new wider modern road, with better grades, and the elimination of curves near the railroad is no doubt necessary. To build such a road and then require motor traffic thereon to whip around curves, on a dangerous dip, to cross the railroad on the present wooden bridge would create an intolerable condition. The situation is indeed comparable to the building of a new road at a new location and certainly no one could justify making such a crossing in connection therewith. The element of safety to the public, traveling upon a highway crossing, may be involved, although the danger is not from being struck by trains. This matter and the question of benefit to the railroad as the sole basis of apportionment is further discussed in the Van Horn Viaduct case, 334 Mo. 995, 70 S. W. (2d) 57, decided concurrently herewith. Moreover, the increased cost of later making a proper structure, after the road is completed, is a matter to be given consideration as of some benefit to the railroad. The order only requires the railroad to pay twenty-five per cent, and also relieves it entirely of the maintenance of the present bridge, which defendant's engineer estimated was from $50 to $75 per year on wooden bridges. Requiring the railroad to pay only one-fourth certainly indicates a reasonable apportionment in view of the policy of the Legislature as disclosed by

the amendment of Section 5171, Revised Statutes 1929, by which, in cases of new State highways, the power of the commission to requiire more ·than one-half to be paid by the State was taken away, necessarily imposing in such cases ·at least one-half of the cost upon railroads.

We overrule the contentions concerning defendant's financial condition for the reasons stated in the Sterling Avenue Subway case, 334 Mo. 1001,·70 S. W. (2d) 61, decided concurrently·herewith.

The judgment is affirmed. *Ferguson* .and *Sturgis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur, except *Hays, J.,* absent.