THE CITY OF HANNIBAL, Plaintiff in Error, *v.* HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Defendant in Error.

1. *Cities — Hannibal — Establishment of streets — Charter.*—The power to open streets, as given in the charter of the city of Hannibal, includes the power to establish streets.

2. *Hannibal, charter of — Proceedings for condemnation of streets — Petition of property-holders.*—No petition by the property-holders is required by the charter of the city of Hannibal, in order to authorize proceedings for the establishment of streets in that city.

3. *Eminent domain — Country roads crossing railroads — General grant.*— Power to appropriate the property of a railroad in such a manner as to destroy or greatly injure its franchise, or render it impossible or very difficult to prosecute the object of its organization, cannot be inferred from the general grant of power to establish a road across its track, but such general grant is sufficient to warrant the laying of a road across its track whenever public necessity demands it; and as to whether that public necessity exists, the city council must be the judge.

4. *Streets, establishment of — Hannibal city council — Jurisdiction over.*— In proceedings for establishment of streets in the city of Hannibal, the city council of that city alone has jurisdiction.

### Error to Hannibal Court of Common Pleas.

*A. B. Wilson*, for plaintiff in error.

*James Carr*, for defendant in error.

BLISS, Judge, delivered the opinion of the court.

The city of Hannibal established a street across the track of defendant's road, and on appeal to the Common Pleas the proceedings were dismissed. Defendant claims that the city had no right to establish the street:

1. Because no power to establish any new street is given in the charter; the power being to open new streets, which counsel would limit to opening streets contained in the plan of the city and of its additions. The power to open a street appears to be used in the city charter as synonymous with the power to lay out and establish such street. I infer this, because otherwise this important power would be withheld entirely from the city, but more especially because the whole statute shows that it was so

understood. Section 15 of the act of March 20, 1861, amending the charter (Sess. Acts 1860–1, p. 247), provides for taking and paying for private property for opening, etc., any public street. If it had already been established, there would be no private property to be taken. The same remark applies to article IX of the act of 1851, incorporating the city. (Sess. Acts 1851, p. 336.) Our road laws use the term in the same general sense, as will be seen by reference to sections 1, 51, and 52 of the act of 1868 (Wagn. Stat. 1217, 1228), although sometimes it is used in its more restricted sense.

2. Defendant secondly excepts to the proceedings because there was no petition by the property-holders. No such petition is required in the proceeding under consideration. The findings under section 2 of chapter 9 of the act of 1851 (Sess. Acts 1851, p. 336) are entirely different from the present, and no private property is taken, except by consent or petition of all the holders of property on the street, and in such case without compensation.

3. But the chief point relied upon is predicated upon the fact that the land appropriated had already been taken for public use by the railroad company, and it is claimed that the city corporation has no right to appropriate for another public use any portion of the land so taken — as by laying out and opening a street across the track of the railroad — without paramount necessity and express legislative authority. It was not claimed that the city cannot be clothed with power to establish streets across the track, but that no such power will be inferred from a general grant.

I do not suppose that a power to appropriate the property of the railroad in such a manner as to destroy or greatly injure its franchise, or render it impossible or very difficult to prosecute the object of the organization, could be so inferred. Thus, in Springfield v. C. River R.R. Co., 4 Metc. 63, cited by counsel, the defendant was authorized to construct its road to a certain point; but the court held that, while the railroad might be made to cross a public highway, as that would be " obviously necessary, and of course warranted," the railroad company, under a grant to locate their road between certain termini, had no
31—VOL. XLIX.

authority to run it along and appropriate a public highway, and for the reason that the two uses are inconsistent.

As to the necessity of opening the street, the city council must be the judge, and the fact that it was opened is the best evidence of their view in the matter. (Young v. City, etc., 47 Mo. 492.) If the order had said in express terms that the opening of the street was a public necessity, it would only have shown the opinion of the council — an opinion we could not review — and no benefit would be derived from requiring such declaration. As to the necessity of a special power to lay a street across the track of a railroad, I do not suppose it has ever been granted, nor do I know that the authority to lay a street or public road across such track has been disputed. It may impose some slight additional burden upon the road, but in entering towns or in running through a settled country the necessity of such streets and roads is well known. The franchise is taken subject to any inconvenience that will arise from it, and the general power given city authorities and County Courts to establish and open streets and roads, is a sufficient warrant to lay them across the track of railroads whenever called for by such necessity.

Of the propriety of the action of the city council we can know nothing ; they alone have jurisdiction in the premises, and their action is affirmed, and the judgment of the Court of Common Pleas is reversed. The other judges concur.