# ST. LOUIS AND SAN FRANCISCO RAILROAD COMPANY, Appellant, v. GORDON et al.

### Division One, June 12, 1900.

1. **Opening Street Over Railroad:** CONDEMNATION NECESSARY. Sections 2609 and 7925, Revised Statutes 1889, which require railroad companies to construct crossings where the railroad crosses "public roads or town streets now or hereafter to be opened for public use," do not confer power upon municipalities by mere order of its board of trustees or by ordinance to open a street across a railroad right of way, without condemnation proceedings. The Constitution protects the property of a railroad company from being taken for public use without just compensation, and these statutes must be held to refer to roads and streets across railroads that have been established by due process of law; that is, by a condemnation proceeding in court, and after just compensation for the taking of the railroad's property for the public use has been ascertained and paid. And this is the law whether the railroad company owns the right of way or simply has an easement therein. But where there has already been a legal dedication of a street over the right of way, no condemnation is necessary, but the order of the board of trustees is all that is necessary to require the railroad to perform its statutory duty to construct and maintain crossings. (Overruling Hannibal v. Railroad, 49 Mo. 480, in part.)

2. **Dedication of Street Across Right of Way.** Where a railroad owns the right of way, the owner of land on both sides of it can not make a dedication of a street over the right of way. He can dedicate only his own ground to public use.

3. ————: DESIGNATION ON PLAT. Where a railroad which owns the land lays off a town on each side of its right of way, and makes a plat of its streets and alleys, and thereon extends them continuously over the tracks, and writes the name of the street on one side and the word avenue on the other, it will be held that it thereby dedicates a street over the right of way, and did not intend to simply dedicate the street up to the right of way on each side.

Appeal from Laclede Circuit Court.—*Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED (*with directions*).

*L. F. Parker* and *J. T. Woodruff* for appellant.

(1) Does the statute requiring railroad companies to construct crossings of a certain character where its railroad crosses "public roads or streets now or hereafter to be opened for public use" R. S. 1899, sec. 1103 permit roads or streets to be opened across the right of way and tracks of a railroad company without compensation—without any proceeding to condemn such right—in short, without "process of law," or does it mean that such crossings shall be constructed as to roads or streets "hereafter to be opened for public use" after the same shall have been lawfully opened across the right of way and tracks of the railroad company by condemnation or some other lawful proceeding—in short, by "due process of law?" (2) Can a municipal corporation, in this case a village, by a mere order of its board of trustees, without appointing commissioners or viewers, and without giving any opportunity for the railroad company to appear, without giving to it its "day in court," and without in any way providing for ascertaining the damages, if any, to the property of a railroad company, lawfully open a street for

public use across the right of way and tracks of a railroad company, and require it to expend large sums of money in grading, construction and maintenance of crossings, etc.

*R. S. Phillips,* for respondents.

(1) There is but one question raised in this record, viz.: Can a municipal corporation by due process of law, compel a railroad company to put in and maintain crossings where public roads or streets already laid out and established cross the right of way of said railroad, according to R. S. 1889, sec. 2609 and sec. 7925? It is admitted that plaintiff owned its right of way in fee simple for railroad purposes, as no corporation in this State can own or control real estate, except that which is necessary in the transaction of its business, and then said real estate can not be held for any other purpose except that for which the corporation was organized. R. S. 1889, sec. 2508; Constitution, art. 12, sec. 7; 4 Am. and Eng. Ency. Law, 230; Railroad v. Tottman, 149 Mo. 657. R. S. 1889, sec. 2631, says: "All railroads of this State are public highways." And yet these railroads would hold them as private ways. State ex rel. Morris v. Railroad, 86 Mo. 13; City of Hopkins, v. Railroad, 79 Mo. 98; Lincoln v. Railroad, 75 Mo. 27; Hannibal v. Railroad, 49 Mo. 480; Young v. City, 47 Mo. 492.

MARSHALL, J.—This is an injunction suit to enjoin the defendant, Gordon, as mayor, and the defendant Bradshaw, as street commissioner, of the village of Conway, in Laclede county, from opening Washington avenue and Ruby street across the plaintiff's right of way. A temporary injunction was granted, which upon final hearing was dissolved, the bill dismissed and plaintiff appealed.

The petition alleges that the defendants are undertaking to lay out said streets across the right of way without any authority of law, and that to permit them to do so would be

to deprive the plaintiff of its property without its consent and without compensation.

The answer admits the plaintiff's incorporation as a railroad and its ownership of its right of way, but alleges that its right of way is only an easement; admits that the defendants are proceeding to open said streets across the plaintiff's right of way, but says they are officers of the village and had a right to do so by virtue of appropriate action of the board of trustees of the village; denies that to open said streets would deprive the plaintiff of its property without compensation, and alleges that said Washington avenue had been laid out by defendant's predecessor across the railroad, and that Ruby street had been laid out across the railroad by C. Hanson. The replication specifically denied that Conway was an incorporated village or that it possessed the powers it was exercising; denied that Washington avenue was laid out across the railroad by its grantors, or that Ruby street had been legally laid out across the railway by C. Hanson.

At the trial, the following stipulation was made:

"It is stipulated and agreed, by and between the parties herein, that the St. Louis and San Francisco Railroad Company owns its right of way through the town of Conway, in Laclede county, Missouri, in fee simple; and did own the same at the time these proceedings were instituted by the same title and for several years prior thereto; subject, of course, to any rights the city of Conway may have acquired by virtue of any law or municipal action on their part to acquire title to any part thereof for street purposes."

In addition to the admission in the answer and the foregoing stipulation, plaintiff proved that there were two crossings over the tracks in the town, and they had been in and used since the road was built in 1870. That the crossing sought to be made at Ruby street was in a cut and intersected the main and two side tracks, the switch stands and frogs

being in the street. That such a place is unsafe for a crossing. That it would cost $150, outside of the grading, to put in a crossing at Ruby street, and would cost $125 per annum to maintain it, and that the company would be damaged $5,000 by the establishment of a crossing at that place. That it would cost $100 to put in a crossing at Washington avenue and seventy-five dollars annually to maintain it.

Defendants, to justify their acts in attempting to open the streets, introduced in evidence the original map of the town of Conway, filed March 15, 1870, and plat of second railroad addition to the town, filed April 20, 1881; also plat of C. Hanson's First Addition, filed March 27, 1882. It introduced also the following order:

"At a regular meeting of the board of trustees of the town of Conway, the following, among other things, were ordered: Railroad crossing should be put in at Washington avenue and Ruby street, and the street commissioner ordered to notify agent.　　"J. I. Gordon, Pres. Board of Trustees.

"R. J. Newport, Clerk."

And also the following order:

"To John Lindsay, Agent St. Louis & San Francisco Railroad Company:

"You are hereby notified that the board of trustees of the town of Conway have ordered crossings put in at the following crossings: One where Washington avenue crosses railroad, and also one where Ruby street crosses railroad, within the corporate limits of said town; said crossings to be put in within thirty days from the date of this notice, or the street commissioner will proceed to put them in according to law.

"W. S. Bradshaw, Street Commissioner."

"This April 19, 1897."

The plats referred to are, 1st, a plat of the town of Conway, made by the South Pacific R. R. Company, through

Andrew Pierce Jr., its managing director, on the 13th of March, 1870, and duly recorded on that day. It shows a town of twenty blocks, bounded by Olive street on the east, and Elm street on the west. Next west of Olive street is Pine street. Then next west there is Commercial street, fifty feet wide. Then one hundred and sixty feet marked "Depot Grounds," and showing a building (station house, apparently), platform (seemingly), and red lines which are supposed to represent railroad tracks. Adjoining this one hundred and sixty feet on the west, is Main street, fifty feet wide. Then, proceeding westwardly, are Spruce street and Myrtle street, and Elm street, the western limits of the town. All these streets run practically north and south as does also the right of way. Running east and west there are three streets, Washington, Madison and Jefferson avenues. All of these streets appear on both sides of the "Depot Grounds," there is no indication on the plat of any intention that these streets shall not be opened across the tracks, but the plat clearly shows a contrary intention. The depot building and platform are between Jefferson and Madison streets.

The second plat is styled "Plat of the 2d Railroad Addition to the town of Conway in Laclede county, Mo." and was filed by the St. Louis and San Francisco Railway Company on the 28th of April, 1881. So far as it pertains to the matter in hand there is no difference between this and the first plat above referred to.

The third plat was filed on March 27th, 1882, by C. Hanson, and is styled: "C. Hanson's First Addition to Conway, Mo." It purports to add blocks 21, 22, 23, and 24 to the town and adjoins the town on the north. Blocks 21 and 22 lie west of the railroad tracks and blocks 23 and 24 lie east of the track. It shows Ruby street running along the south line of the blocks and crossing the railroad track. Between blocks 22 and 23 there is a vacant space left on the plat which is not designated in any way except by a red line drawn

through the centre thereof, but if this plat is laid beside the first plat of the town, this vacant space corresponds with the one hundred and sixty foot right of way of the railroad, shown on the first plat, and it is assumed that this vacant space is the railroad right of way.

Two questions are presented by this record:

*First*: Do sections 2609 and 7925, Revised Statutes 1889, which require railroad companies to construct crossings where the railroad crosses "public roads or town streets now or hereafter to be opened for public use," confer power upon municipalities by a mere order of its trustees or by ordinance to open a street across a railroad right of way, without any condemnation proceedings whatever; and

*Second*: Are Washington avenue and Ruby streets dedicated public streets?

## I.

The power of a city, by ordinance or order of its board of trustees, or of a county court, by simple order, to establish and open a street or road across the right of way of a railroad, and to require the railroad company to construct and maintain good and sufficient crossings is claimed to exist by virtue of sections 2609 and 7925, Revised Statutes 1889, and under the decision of this court in Hannibal v. Han. & St. J. Railroad Co., 49 Mo. 480.

The line of argument employed to reach this result is this: Railroad companies derive all their powers from the State. The State statutes require railroad companies to construct and maintain crossings, "where its railroad crosses public roads or town streets, now or hereafter to be opened for public use" (sec. 2609, R. S. 1889); the statutes of the State are as much a part of the franchise as if written in the charters of the companies: therefore a railroad company is obliged to put in crossings at all roads or streets that were established at the time the road was chartered or that may

be established at any time thereafter, and it makes no difference whether the railroad company bought the fee in the land covered by its right of way or acquired only an easement, the land is held subject to the right of the county or city authorities to establish and open as many roads and streets across the land as such authorities may at any time see fit to establish, and the railroad company is not therefore within the protection of the Constitution which forbids private property to be taken for public use without just compensation (sec. 21, art. II, Const. 1875; par. 16, sec. 1, art. I, Const. 1865). This argument finds countenance in Hannibal v. Railroad, 49 Mo. l. c. 482, where it is said: "It may impose some slight additional burden upon the road, but in entering towns or in running through a settled country the necessity of such streets and roads is well known. The franchise is taken subject to any inconvenience that will arise from it, and the general power given city authorities and county courts to establish and open streets and roads, is a sufficient warrant to lay them across the track of railroads whenever called for by such necessity," and it is held in the same case that the necessity for opening streets is a question for the city council and is not subject to review by the courts.

The doctrine so announced and here contended for is in conflict with the express provision of the Constitution of 1865, which declared: "That no private property ought to be taken or applied to public use without just compensation" (par. 16, sec. 1, art. I. Const. 1865), and of 1875, which provides: "That private property shall not be taken or damaged for public use without just compensation. Such compensation shall be ascertained by a jury or board of commissioners of not less than three freeholders, in such manner as may be prescribed by law; and until the same shall be paid to the owner, or into court for the owner, the property shall not be disturbed or the proprietary rights of the owner therein divested. The fee of land taken

for railroad tracks without the consent of the owner thereof shall remain in such owner, subject to the use for which it is taken" (sec. 21, art. 2, Const. 1875), and which further provides: "The exercise of the power and right of eminent domain shall never be so construed or abridged as to prevent the taking, by the General Assembly, of the property and franchises of incorporated companies already organized, or that may be hereafter organized, and subjecting them to the public use, the same as that of individuals. The right of trial by jury shall be held inviolate in all trials of claims for compensation, when in the exercise of said right of eminent domain, any incorporated company shall be interested either for or against the exercise of said right." (Sec. 4, art. 12, Const. 1875).

If it should be conceded for argument's sake that every statute then in force or thereafter enacted is just as binding upon a railroad company as if it were written in its charter (which would be a conclusion without a precedent) still it must also be conceded that the protection of the Constitution must also be read into the charter, and that under that protection the property of the railroad can not be taken for public use without just compensation, and the conclusion necessarily follows that the statute (secs. 2609 and 7925, R. S. 1889) only refers to roads and streets across railroads that have been established by due process of law, that is, by a condemnation proceeding in court, and after just compensation for the taking of the railroad's property for the public use of a road or street has been ascertained and paid, and that no county court, city council or board of trustees can by simple order or solemn ordinance deprive a citizen or railroad of his or its property, even for road or street purposes. The amount of compensation, whether great or small, can not control the right or dispense with the judicial proceeding necessary to take the property or impose an additional use upon it.  In this case it is stipulated that the railroad owns

the fee to the right of way. The first plat filed shows it originally owned the whole town. The fact that under the law its right to own land is limited may be conceded, but it does not affect this case, for the rights of the city as to the streets (except Ruby street) are obtained from the railroad, and are therefore no greater than those of the railroad, and in no event can the question of excess be called in question in this proceeding. But it is immaterial whether the defendant owns the fee to its right of way or has only an easement thereto, such as it could alone acquire under the Constitution of 1875, for in either event, it is an interest in real estate; it is property, which can not be taken away from it without just compensation, and the board of trustees have no power or jurisdiction to determine what that compensation shall be, much less to take the property for street purposes without compensation and by simple order. If any authority were needed for so plain a proposition of law, it is afforded by the cases of K. C. Railroad Co. v. Commissioners, 26 Pac. Rep. 394; People v. Railroad, 52 Mich. 277; C. & G. T. Railroad Co. v. Hough, 28 N. W. Rep. 532; I. C. Railroad Co. v. Commissioners, 43 N. E. Rep. 1100; C. & N. Railroad v. Cicero, 154 Ill. 656; I. C. Railroad Company v. Chicago, 156 Ill. 98; I. C. Railroad Co. v. Commissioners, 161 Ill. 251; C. K. & W. Railroad Co. v. Chautauqua Co., 49 Kan. 763. And the necessity for proceeding by condemnation in such cases is assumed and the measure of damages defined in Kansas City v. Belt Ry. Co., 102 Mo. 633. So much of the case of Hannibal v. Railroad, 49 Mo. 480, as holds that a railroad right of way may be used for street purposes by mere order or ordinance, is therefore no longer the law in this State. It follows that the first question must be decided in the negative, and that a road or street can not be established across a railroad right of way except by proper condemnation proceedings in court and by due process of law the railroad company is awarded and paid just compensation. The order of

the board of trustees of the town of Conway, so far as it rested upon any such construction of sections 2609 and 7925, Revised Statutes 1889, was therefore void, for such sections only refer to roads and streets that have been or may be legally established, and no street can be legally established unless the constitutional guarantees have been observed.

## II.

Are Washington avenue and Ruby streets dedicated public streets?

There is no possible ground for a contention that Ruby street is a dedicated street across the railroad right of way. The stipulation agrees that the railroad company owns the fee to its right of way. The dedication of Ruby street by Hanson, in 1882, conveyed no title to that street across the right of way, because Hanson did not own that land and therefore had no power to dedicate it. Hanson's dedication of Ruby street was effective only to the extent that Hanson owned the land covered by the street, and as he did not own the right of way his dedication of that street across the right of way of the railroad was of no force or effect. For this reason Ruby street was not a legally established street, and the board of trustees of the town of Conway had no right to order the railroad to construct and maintain a crossing at that place, and no right to construct a crossing for failure of the railroad to do so. The injunction should have been made perpetual as to Ruby street.

The status of Washington avenue, however, is different. The first plat on the town of Conway, filed in 1870 by plaintiff's grantor, the South Pacific Railroad, shows Washington avenue as a public street extending completely across the town from east to west and from its eastern to its western boundary. The railroad cuts the town into two parts by extending completely through the town from north to south. If it

be true as contended that Washington avenue extends from eastern limits of the town to the railroad right of way, and there stops, and then begins again on the west side of the railroad right of way and runs to the western limits of the town, then the same must be true of Madison and Jefferson avenues, for there is no difference between the three avenues discernible from the plat. And if this be true as to all those avenues, then the anomaly is presented of a town divided into two parts, with no possible means of getting from one part to the other, for if it be true that the railroad right of way makes the railroad the owner of the intervening one hundred and sixty feet, not only as to the surface thereof, but from the centre of the earth beneath to the sky above—*ab terra usque ad coelum*—then the people in one part of the town could not get to the other part of the town on the surface, by tunnel or by a balloon, without being trespassers on the railroad right of way. That such was not the intention of the railroad in platting the town is shown by the fact that Jefferson avenue has been open and used as a street across the right of way, by virtue of the plat dedication, for more than ten years, and as above pointed out there is no difference between Jefferson avenue and Washington avenue so far as the plat discloses. The name "Washington" appears on the eighty foot space left for the street on the west side of the railroad right of way and the word "Avenue" appears on the similar space on the east side of the railroad right of way, and the same is true as to Madison and Jefferson avenues. This unexplained, evidences an intention to make those avenues continuous throughout the whole width of the town, so as to afford access from one part thereof to the other. In this regard this plat is like the plat considered in California v. Howard, 78 Mo. 1. c. 90, and a similar construction was put by this court upon a similar plat as to streets crossing a railroad in that case. Under these circumstances it would be absurd to hold that it was intended by plaintiff's grantor in platting the town of

Conway and in dedicating these avenues that they were not to extend across the right of way of the railroad. We therefore conclude that Washington avenue is a legally dedicated street across the right of way of the plaintiff's railroad, and being such no condemnation was necessary, but the public authorities had a right to accept the dedication at any time (Heitz v. St. Louis, 110 Mo. 618; Buschmann v. St. Louis, 121 Mo. 523), and that the order of the board of trustees was all that was necessary to require the plaintiff to perform its statutory duty, under sections 2609 and 7925, Revised Statutes 1889, to construct and maintain crossings.

It follows that the injunction was properly dissolved as to Washington avenue, but should have been made perpetual as to Ruby street. For this reason the judgment of the circuit court is reversed and the cause remanded with directions to that court to enter a decree as to Ruby street alone.

All concur.