STATE OF MISSOURI at the Relation and to the Use of ST. PAUL & KANSAS CITY SHORT LINE RAILROAD COMPANY, Appellant, v. PUBLIC SERVICE COMMISSION, and J. C. COLLET, GEORGE H. ENGLISH, WILLIAM STOECKER, W. M. ANDERSON and HARRY E. MCPHERSON, Members of the PUBLIC SERVICE COMMISSION.—92 S. W. (2d) 126.

Division Two, March 21, 1936.

*Luther Burns, Henry S. Conrad, L. E. Durham, Hale Houts* and *I. M. Lee* for appellant.

726

*Sam O. Hargus* and *James P. Boyd* for Public Service Commission.

WESTHUES, C.—This is an appeal from a judgment of the Circuit Court of Cole County, Missouri, approving an order of the Public Service Commission. The controversy, which the relator, St. Paul & Kansas City Short Line Railroad Company, sought to have the commission adjust, was the apportionment of the cost of the construction of an underpass in the separation of a grade crossing of a county road in Caldwell County and the railroad tracks of relator. The commission dismissed the petition of the railroad company on the ground that there was an agreement between the railroad company and the county as to the apportionment of the cost, and, therefore, there was no controverted question before the commission. The commission held that a court was the proper jurisdiction in which to enforce the alleged agreement. The commission cited, and quoted from State ex rel. v. Public Service Commission, 308 Mo. 359, 272 S. W. 957, l. c. 962, as authority for its ruling. On appeal to the Circuit Court of Cole County the order of the commission was approved and the railroad company appealed.

In order to fully understand the situation a short history of the proceedings before the commission will be necessary. On June 13,

1930, the St. Paul & Kansas City Short Line Railroad Company filed an application before the commission setting forth that it desired to construct a railroad between Coburn, in Grundy County, Missouri, and a point near Birmingham, in Clay County, Missouri, passing through Grundy, Livingston, Davies, Caldwell, Ray and Clay counties. In its application the railroad company petitioned the commission to approve plans, submitted by the railroad company, for the construction of various grade crossings and separation of grades of various public highways in said counties. Only one of these grade separations is in controversy in this case. This crossing was designated in the proceedings as crossing number 26, in Caldwell County. The railroad company submitted a plan of separation, which had been agreed upon by the county, for the construction of an underpass, which plan was approved by the commission. An exhibit, filed with the commission, contained an alleged agreement, signed by the judges of the County Court of Caldwell County, wherein it was recited that Caldwell County would pay not to exceed $10,000 as its part of the cost of the construction of the underpass, the sum to be paid in yearly installments of $500 each, the railroad company to pay to the county any sums it might receive from the State of Missouri, in case the road should be taken over by the State Highway Department as a Farm-to-Market road. The commission, as above stated, approved the plan of separation. On the question of the apportionment of, the cost the commission in its order stated: ''All interested parties are agreed as to the apportionment of the cost of the structure.'' This order was dated the 29th day of October, 1930.

Thus the matter stood, in so far as the Public Service Commission was concerned, until the 6th day of October, 1933, when the railroad company filed what was termed a petition for a supplemental hearing with reference to crossing number twenty-six. The supplemental petition related the history of the case and stated that in the former hearing Caldwell County had either fraudulently or mistakenly represented to the commission that it would pay and had agreed to pay for a part of the construction of the underpass; that the railroad company had constructed the underpass at a cost in excess of $23,000; that the County Court of Caldwell County had not paid any sum and refused to pay any sum on the cost of the construction of the underpass. The petition prayed the commission to hear and determine the matter and to allocate the cost of construction between the railroad company and the county and to determine what proportion of the cost thereof should be paid by the county.

To this petition Caldwell County filed a motion to dismiss the proceedings, setting forth various grounds why the Public Service Commission did not have jurisdiction to hear the supplemental petition, one of these grounds being that in the original hearing it had been

represented by the railroad company that there was an agreement with reference to the apportionment of the cost and that in the supplemental petition reference was made to that agreement and, therefore, the case involved the construction of a contract. The commission so decided, and held that it was a question for the courts to determine.

We are of the opinion that the Public Service Commission was in error in dismissing the petition and that the Circuit Court of Cole County should have reversed the order and remanded the cause to the commission for the purpose of apportioning the cost for the construction of the underpass.

This court en banc treated this question at length in a similar case, State ex rel. v. Public Service Commission, 271 Mo. 270, 197 S. W. 56, l. c. 59, 60 (5). In that case the city of Moberly entered into a contract with the Wabash and the M. K. T. Railway companies to pay one-half of the cost of the construction of an underpass and one-half of the cost in case the underpass should need repairing or should be rebuilt. Thirty years later the city of Moberly petitioned the Public Service Commission to require the railroad company to enlarge the underpass for the accommodation of increased traffic and also asked the commission to assess the entire cost against the railroad companies. The railroad companies contended that the city should pay one-half of the cost as it had agreed to do in the contract. The Public Service Commission ignored the contract and apportioned the cost. By its order the railroad companies were required to pay a much larger amount than the city. This court en banc held that the Public Service Commission rightly ignored the contract, for the reason that the contract was void on the ground that it was in restraint of the police power of this State and was without consideration. The court cited, and quoted from a decision of the United States Supreme Court in a similar case. [Northern Pac. Ry. Co. v. Duluth, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630.]

█ It is settled law that the State may impose upon a railroad company the entire cost of a separation of a grade crossing between a street or highway and the railroad tracks. In cases where a grade crossing of a public highway or street and a railroad track is to be eliminated and the State, city, or county is a party to the proceedings the public is affected both in the matter of the elimination of the crossing and in the cost of the separation. In cases where there is a separation of a crossing between two lines of railroad the public is not directly affected in the apportionment of the cost. The Moberly case was later approved by the court en banc in the case of Kansas City v. Kansas City Terminal Ry. Co., 324 Mo. 882, l. c. 907, 25 S. W. (2d) 1055, l. c. 1065, 1066 (7). This case is known as the Oak Street Viaduct case. The contract between the city and the Terminal Railway Company was held to be valid. This, on the theory that there was

a valuable consideration given by the city to the railroad company in exchange for which the railroad company agreed to bear *the entire expense* of the construction of the viaduct. In discussing the question and pointing out the distinction between the Kansas City Terminal contract and the contract in the Moberly case the court said:

"Defendant's industrious counsel have cited many cases in which contracts between municipalities and public utilities, in ordinance form and otherwise, have been held invalid on the ground that they limited the exercise of the police power. But they have found no case holding that, where a railroad company for a valuable consideration moving to it from a municipality has promised to construct crossings at the points where its railroad crosses the streets of the municipality, such contract is an abridgment of the police power. Such a case, and that is the case at bar, is the exact converse of the one considered by the Supreme Court of the United States in M. K. & T. Railroad Co. v. Oklahoma, supra. There the municipality had received an adequate consideration for its agreement to relieve the railroad company entirely of the burden of constructing a crossing. The court held that the contract not only was not a restraint on the police power, but that it was within the protection of the provision of the Constitution of the United States, which forbids the impairment of the obligation of a contract by a state. Contracts with reference to the construction of crossings have been held void primarily on the ground that they were without consideration. Such was the Moberly case. [State ex rel. v. Public Service Commission, 271 Mo. 270, 197 S. W. 56.]"

What was said in the first Oak Street Viaduct case, which was here on appeal from the Public Service Commission and which case was quoted by the commission in the case now before us, was *obiter*. It will be noted that the same learned judge wrote both of the opinions in the Oak Street Viaduct cases. In the first, State ex rel. v. Public Service Commission, 308 Mo. 359, l. c. 378, 272 S. W. 957, l. c. 962 (10, 11) this court, Division One, said:

"The commission has the exclusive power to determine and prescribe both (a) the manner of crossing, and (b) the apportionment of expenses. But the exercise of this power with respect to one of these functions rests upon considerations which are without influence with reference to the other. A railroad and a municipality cannot, by agreement, determine the manner, including the particular point, of the crossing of the railroad by a street, because of the paramount interest of the public in the question of safety involved. But there is no reason why they may not agree upon the apportionment of the expenses. If either assumes the whole burden, or if they agree upon the proportionate part each shall pay, there is no occasion for submitting the question of apportionment to the commission. In other words, the existence of a controversy as to the apportionment of ex-

penses is a prerequisite to the exercise by the commission of its jurisdiction with respect thereto.''

It is apparent that the above statements, with reference to the power of the commission in regard to the apportionment of the cost, are out of harmony with the Moberly case and also the latter Oak Street Viaduct case, both opinions by the court en banc.

 Frequently in the separation of grade crossings of our State highways and railroad tracks the highway department and the railroad companies submit agreed plans for the separation, as well as the apportionment of cost. If, upon an examination, the plans of separation meet with the approval of the Public Service Commission the commission adopts the plans and enters an order to that effect. The commission should follow the same procedure with reference to the apportionment of the cost. The apportionment agreed upon should be examined and if found satisfactory and equitable the commission should enter an order in the same manner as with reference to the plans of separation. In other words the apportionment of the cost should be by order of the commission. It has never been contended that in a case where a railroad company and the Highway Commission have agreed upon a plan of separation which had been submitted to the commission that that involves the interpretation of a contract. It is conceded that such an agreement is not binding on the commission. Under the ruling made in the Moberly case and in the Oak Street Viaduct case, by the court en banc, agreements of the kind now before us stand on the same footing with agreements as to the plans of separation. Statute, Section 5171, Revised Statutes 1929 (Mo. Stat. Ann., p. 6585), grants to the commission ''the exclusive power to determine and prescribe the manner, including the particular point of crossing, and the terms of installation, operation, maintenance, apportionment of expenses,'' etc., of all grade crossings and the separation thereof. The only limitation in this statute upon the power of the commission is that it is authorized to assess not more than one-half of the cost of a separation of a grade crossing, between a railroad company and a highway, against the highway department. In cases, therefore, as the one now before us and the Moberly case, agreements between cities, counties or the State and the railroad companies as to the apportionment of cost of separation of grades are no more binding upon the commission than an agreement as to the plans of separation.

It follows that the judgment of the circuit court must be reversed with directions to enter a judgment setting aside the order of the commission, and with directions to the commission to hear and determine the question of the apportionment of the cost of the construc-

tion of the underpass in question. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.