**WABASH RAILROAD COMPANY, a Corporation, Respondent,**

v.

**CITY OF WELLSTON, a Municipal Corporation, Appellant.**

No. 44218.

Supreme Court of Missouri.

Division No. 1.

March 14, 1955.

Wm. J. Becker, Clayton, for appellant.

Albert E. Schoenbeck, St. Louis, for respondent Wabash R. Co.

LOZIER, Commissioner.

Plaintiff railroad company (herein called the Wabash) sued defendant city (herein called Wellston) for $12,000 with six per cent interest from January 31, 1951. The Wabash had judgment for $14,108. Wellston appealed.

We believe that the issues may be better stated after we summarize the uncontroverted facts.

The Wabash tracks cross three certain streets in St. Louis County. On May 19, 1949, the Wabash and the St. Louis County Court (the streets were then in an unincorporated area) filed with the Public Service Commission a joint application for authority and permission to install, maintain and operate automatic short-arm gates and flashing light signals at the three crossings. When Wellston was incorporated as a third class city on June 9, 1949, the streets and crossings were within its corporate limits.

The minutes of the July 27, 1949, meeting of the Wellston city council recited, in substance: The city attorney reported that he had conferred with the Wabash as to the proposed crossing installations; that the matter was then pending before the public service commission; that the St. Louis County Court had "withdrawn from the matter and placed the same with the officials and governing body of the City of Wellston"; that the cost of the installations would be $35,000; that the county court had agreed to "assume its proportionate share which amounted to $12,000 which amount would be the cost that the City of Wellston should bear and would be its total to be paid for the improvement; that the Wabash Railroad would make the said installations and permit the City of Wellston to pay its part as soon as funds are available * * *." The city attorney "further reported that a hearing on this matter would be held before the Public Service Commission at Jefferson City, Mo., at an early date and suggested that the city council authorize the mayor and himself to appear before the commission with plenary authority to act in the premises."

At that meeting, the city council unanimously voted that the mayor and city attorney "be authorized and directed to appear" at the hearing "and that they be invested with plenary authority to act in behalf of the City of Wellston * * *."

The hearing was held on August 30, 1949. According to the Commission's Report and Order: "At the hearing the City of Wellston appeared by counsel and requested permission to be substituted as a party to the application in lieu of St. Louis County, for the reason that * * * the streets and crossings covered by the (original Wabash-St. Louis County Court) application are located within that city." The estimate of the total cost of the installations was $35,000, "of which the sum of $12,000 is to be contributed by the City of Wellston, and the railroad company at its own expense shall maintain and operate the signal protection at each of the crossings."

The Report and Order recites the introduction in evidence of a certified copy of the minutes of the city council's July 27, 1949, meeting, "at which time that city obligated itself to pay $12,000 of the estimated $35,000 for the installation of the (crossings) protection." Among the commission's findings and orders was that "the division of cost shall be apportioned as set out and agreed to in evidence, that is, $12,000 of the installation cost shall be borne by the City of Wellston and the balance borne by the Wabash Railroad Company."

The order, made October 31, 1949, was to "take effect ten days from the date hereof." Neither the Wabash nor Wellston filed an application for a rehearing by the commission.

The Wabash made the installations. On January 31, 1951 (some four months after the installations were put in operation), and at various times thereafter, the Wabash demanded payment of the $12,000. Wellston has made no payments to the Wabash.

It is the position of the Wabash that Wellston "is now precluded by law from attacking the public service commission order, either directly or collaterally." The Wabash points out that as Wellston did not, prior to the effective date of the order, apply for a rehearing, the order became final. Sec. 386.500. (All section references are to RSMo 1949, V.A.M.S.) And see State ex rel. Kansas City, Independence & Fairmount Stage Lines Co. v. Public Service Commission, 333 Mo. 544, 63 S.W.2d 88, 90 [3].

Sec. 386.550 is: "In all collateral actions or proceedings the orders and decisions of the commission which have become final shall be conclusive." Sec. 386.510 provides that (other than the circuit court upon direct review or the appellate courts upon appeal from a circuit court judgment made after such a review) "no court in this state * * * shall have jurisdiction to review, reverse, correct or annul any order or decision of the commission or to suspend or delay the executing or operation thereof, or,

to enjoin, restrain or interfere with the commission in the performance of its official duties. * . * * "

Wellston contends that those statutory provisions are inapplicable; that it may, in this action, collaterally attack the instant public service commission order on these grounds: The order was void on its face in that (1) the commission had no jurisdiction to order Wellston to pay any part of the cost of grade crossing protection at crossings within the city's corporate limits; and in that (2) "the agreement, if any," between Wellston's mayor and city attorney and the Wabash was void because "the city council was without authority to delegate its power" to those officials; the "contract" by the city was void because not expressly authorized by law, or in writing and subscribed by the parties or "acted upon by the city's governing body."

Sec. 389.640 provides, inter alia: *"The commission shall have the exclusive power to determine and prescribe the manner,* including the particular point of crossing, *and the terms* of installation, *operation, maintenance, apportionment of expenses, use and protection* of * * *. *each crossing of a public road or highway by a railroad* * * * and of a street by a railroad * * * *and to alter* or abolish any such crossing, and to require, where, in its judgment, it would be. practicable, a separation of grades at any such crossing * * * *and to prescribe.* the terms upon which such separation shall be made and *the proportion in which the expense of the alteration* or abolition *of such crossings* or the separation of such grades *shall be divided between"* the railroad corporations affected "and the state, county, *municipality* or other public authority in interest * * *." (Our italics.)

Wellston contends that Sec. 389.640 is not applicable to protection at grade crossings within the corporate limits of municipalities; and that the public service commission has no power to apportion against Wellston any part of the cost of the instant installations. Wellston cites: Sec. 389.610 (prescribing the type of crossings railroads must construct and maintain at crossings over public roads, or the streets of villages or towns, whether incorporated or not); Sec. 389.620 (requiring railroads to construct, reconstruct, pave, gutter, curb or otherwise improve. and repair certain portions of any street, alley, avenue, public highway or sidewalk ordered. improved by any incorporated city, town or village); and. Sec. 389.630 (authorizing the city, town or village, in the event the railroad fails or refuses to do the work. required .to be done by it under the ordinance enacted under Sec. 389.620, to cause such work to be done and to .recover the cost thereof from the railroad).

Wellston also cites Sec. 77.540, empowering the city council of third class cities "to regulate the crossing of railroad tracks, and the. crossing of streets, avenues and alleys by railroad tracks, and to provide for the illumination of the same and the stationing of watchmen thereat, and to provide precautions and prescribe rules regulating such railways and crossings, and to regulate the running, handling and operation of railway engines and cars within the limits of the city, and to prescribe rules relating thereto, and to govern the speed of railway engines, cars and trains, and to make and enforce rules or restrictions to prevent accidents at crossings, and on the tracks of railways, and to prevent fires from engines; and may. provide punishment or fines * * * for any person or corporation violating the ordinances authorized by this section."

Wellston argues: "After reading" Secs. 389.610, 389.620 and 389.630 "and then reading Sec. 389.640, we cannot come to the conclusion that the public service commission has any power, jurisdiction or authority to enforce an order which would require the City of Wellston to pay any part of safety appliances at the crossings. Such authority or jurisdiction of the commission is not included there. It cannot be read into any part of those statutes." Wellston asserts Sec. 77.540 "gives to the City of Wellston itself the power and authority sought to be exercised by the com-

mission in its void order of October 31, 1949."

Those contentions are ruled adversely to Wellston. It is not necessary to "read into" Secs. 389.610, 389.620, 389.630 or 77.540 the commission's authority to determine either the necessity for the crossing protection or the apportionment of the cost thereof.

■ There is no ambiguity in the language of Sec. 389.640. The section clearly vests in the Public Service Commission "exclusive power" to determine, not only "the manner * * * and the terms of installation, operation, maintenance * * * use and protection" at any crossing at grade of any public road, highway or *street* by a railroad, but the "apportionment of expenses" of any such protection. In Liddle v. Thompson, 236 Mo. App. 1071, 162 S.W.2d 614, 621 [8], we said of what is now Sec. 389.640: "Since 1913 the Public Service Commission has had exclusive jurisdiction over the establishment of grade crossings and has been authorized to determine and prescribe the manner and point of crossing and the terms of installation, operation, maintenance, apportionment of expenses and the use and protection of such crossing." And see: State ex rel. Alton Railroad Co. v. Public Service Commission, 334 Mo. 985, 70 S.W. 2d 52, 54 [1–6]; AmericanPetroleum Exchange v. Public Service Commission, Mo., 172 S.W.2d 952, 995 [4, 5]. We hold that the commission had jurisdiction over the instant crossings and the apportionment of the cost thereof.

■ Wellston next contends that the commission's order was void because it shows on its face that the city council attempted to delegate its legislative power to the mayor and the city attorney. As we understand, this contention is based upon Wellston's hereinbefore overruled contention as to the nonapplicability of Sec. 389.640 to grade crossings in municipalities. In any event, the instant record shows no delegation of the city council's legislative powers. Until the instant case was filed, the council neither attempted to assert its claimed authority over such grade crossings nor denied the commission's authority over such crossings. The order itself shows that, acting under directions made by the council at its July 27, 1949, meeting (a certified copy of those directions was incorporated by reference in the order), the city "appeared by counsel and requested permission to be substituted as a party" and that the "substitution was granted." See State ex. inf. Wilkerson ex rel. City of Sikeston v. Missouri Utilities Co., 345 Mo. 732, 137 S.W.2d 456, 460 [3]. The assignment is overruled.

■ Wellston's final contention is that the "contract" by the city to pay $12,000 of the cost of the installations was void because not expressly authorized by law, or in writing and subscribed by the parties or acted upon by the city's governing body. (See Sec. 432.070.) However, Wellston's obligation to pay the $12,000 is not contractual. Wellston's obligation to bear approximately one-third of the cost of the installations was fixed by the final order of the Public Service Commission, made after a hearing held under the provisions of Sec. 389.640. State ex rel. and to Use of St. Paul & Kansas City Short Line R. Co. v. Public Service Commission, 338 Mo. 724, 92 S.W.2d 126, 128 [4]; Kansas City v. Kansas City Terminal Ry. Co., 324 Mo. 882, 25 S.W.2d 1055, 1064 [4, 5]. The assignment is overruled.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by LOZIER, C., is adopted as the opinion of the court.

All concur.