STATE of Missouri ex rel. CHICAGO, BUR-
LINGTON & QUINCY RAILROAD
COMPANY, Plaintiff-Appellant,

v.

PUBLIC SERVICE COMMISSION of
Missouri, Defendant-Respondent,

and

City of Bellefontaine Neighbors,
Intervenor-Respondent.

No. 47485.

Supreme Court of Missouri,

Division No. 2.

March 14, 1960.

Motion for Rehearing or to Transfer to
Court en Banc Denied April 11, 1960.

Clyde J. Linde, Robert B. Langworthy, Billy S. Sparks, Kansas City, C. W. Krohl, Chicago, Ill., R. W. Hedrick, Jr., Jefferson City, Langworthy, Matz & Linde, Kansas City, Hedrick and Hedrick, Jefferson City, of counsel, for appellant.

Glenn D. Evans, Gen. Counsel, Thomas J. Downey, Asst. Gen. Counsel, Jefferson City, for respondent, Public Service Commission.

Sidney M. Glazer, St. Louis, for intervenor-respondent.

BARRETT, Commissioner.

The double-track line of the Chicago, Burlington & Quincy Railroad Company runs through the City of Bellefontaine Neighbors, and since 1922 there has been a bridge over the tracks at Shepley Drive. Upon complaint of the city and a tendered proposal for "reconstruction," the Public Service Commission found that the bridge "was in a deteriorated and run-down condition," that it was dangerous and inadequate to handle present day traffic, that it would be improvident to repair the bridge at an estimated cost of $20,000 and if repaired would not sustain the required "load capacity," and, accordingly, the commission directed the railroad to construct a new concrete and steel bridge at the approximate cost of $93,000, the city to pay one third of the cost of construction and thereafter maintain the bridge. The railroad appeals from a judgment of the Circuit Court of Cole County affirming the commission's order.

The company acquired its right of way and constructed the railroad in 1892 when the area in which Bellefontaine Neighbors is now located was undeveloped. It is said, therefore, unless the city has acquired some right to use the bridge, either through condemnation or agreement, that the com-

mission's order is an unconstitutional taking of the company's property without just compensation, impairs the obligation of contracts and is a denial of due process. To establish a base for its argument the company relies upon these facts: In February 1922, for its "convenience in the development and sale" of the land in the area, the Coburg Land & Improvement Company and the railroad entered into a written contract, "binding upon the successors and assigns of the parties," in which the railroad granted the promoting company a revocable "license * * * to construct and maintain at the (its) sole expense" this bridge over the tracks at Shepley Drive. Thereafter, in September 1932, upon a petition to accept Shepley Drive as a county road, an order of the County Court of St. Louis County contained these recitals: "Whereas, the Coburg Land and Investment Company has heretofore constructed a bridge on Shepley Drive and across the right-of-way of the Chicago, Burlington and Quincy Railroad Company, under a License from said Railroad Company, and *Whereas, it is the desire of* the Coburg Land and Investment Company and *the aforesaid Railroad Company* that said bridge aforementioned be accepted as a county structure" and whereas the investment company delivered the county $400 to apply on the repair and maintenance of the bridge, Shepley Drive was accepted as a county road and it was ordered "that said bridge across the right-of-way of the Chicago, Burlington and Quincy Railroad Company *be accepted as a county bridge* and that same be hereafter maintained as such." The City of Bellefontaine Neighbors, including the area of Shepley Drive and the bridge, was incorporated in 1950 and, in these circumstances it is argued that the city has no right to use the bridge, that it has acquired no interest in the bridge, and that the bridge "is a private crossing" and therefore the commission's order is void.

There is an elaborate argument either that the contracts between the railroad and the improvement company and the county are void, in which case the city has no right in the bridge, or that the contracts are valid, in which case the contracts require the "successors and assigns to construct the bridge and thereafter to maintain it" as provided in the 1922 contract with the investment company. It is said in either instance that the commission's order violates due process and is void. In brief, the railroad argues that these circumstances fall within Missouri, Kansas and Texas Ry. Co. v. State of Oklahoma, 271 U.S. 303, 46 S. Ct. 517, 70 L.Ed. 957, in which there were a number of unauthorized crossings in existence when the City of McAlester was platted, therefore the city entered into a contract with the railroad and agreed to bear the cost of construction of certain grade crossings. It was held that the contract did not improperly infringe upon the city's police power, that the contract was valid; hence the Oklahoma commission's order requiring the railroad to construct specified grade crossings impaired the obligation of contracts and deprived the railroad of due process.

The decision in the Oklahoma case has been distinguished from other situations many times, often enough that it is not necessary to do so here. See, for instance, State ex rel. and to Use of St. Paul & Kansas City Short Line R. Co. v. Public Service Commission, 338 Mo. 724, 729, 92 S.W.2d 126, 128. Furthermore, no such contract is involved in this case, the City of Bellefontaine Neighbors was not a party to either of these contracts and by its subsequent incorporation and Shepley Drive and the bridge becoming a part of the city's streets did not become a party to them. It should be carefully noted that in accepting the bridge the county did not accept and agree to be bound by the contract between the railroad and the investment company, the county merely "accepted" the bridge as a county bridge—to be "maintained as such." The railroad does not contend that the bridge is not a part of a public road, it contends because the city was incorporated

*after* the construction of the railroad that it has acquired no rights "over the right-of-way," by condemnation or otherwise, and therefore has no rights "except through the existence of a contract between the railroad company and the *city*" (sic county). If the bridge has been dedicated to the public, first expressly to the county and subsequently by its incorporation to the city, it is of course not necessary that the city or county condemn the right of way. St. Louis & S. F. Ry. Co. v. Gordon, 157 Mo. 71, 57 S.W. 742.

This is but one facet of the matter, however; governmental authority may not in compelling a grade separation or the reconstruction of a bridge unconstitutionally impair the obligation of contracts "but this limitation on governmental authority means only that any such compulsion must be reasonable and within the police power." 44 Am.Jur., Sec. 304, p. 525. See also State ex rel. and to Use of St. Paul & Kansas City Short Line R. Co. v. Public Service Commission, supra, and State ex rel. Missouri, K. & T. Ry. Co. v. Public Service Commission, 271 Mo. 270, 197 S.W. 56, in which there were contracts between the city or county and the railroads but the commission was nevertheless authorized to compel the reconstruction and apportion the cost of underground grade separations. The City of Bellefontaine Neighbors does not seek in this proceeding to acquire any rights in and to the bridge or the railroad right of way; the bridge being in existence the city is the complainant in this proceeding (V.A.M.S. Sec. 386.390) invoking the jurisdiction of the Public Service Commission over the railroad and the bridge. V.A.M.S. Secs. 386.250, 386.330, 389.640. "There is no ambiguity in the language of Sec. 389.640. The section clearly vests in the Public Service Commission 'exclusive power' to determine, not only 'the manner * * * and the terms of installation, operation, maintenance * * * use and protection' at any crossing at grade of any public road, highway or *street* by a railroad, but the 'apportionment of expenses' of any

such protection." Wabash R. Co. v. City of Wellston, Mo., 276 S.W.2d 208, 211; State ex rel. State Highway Comm. v. Conrad, Mo., 310 S.W.2d 871, 876. And, it may be added, the commission's jurisdiction in this respect includes subways, viaducts and bridges, their construction, relocation or reconstruction. State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 832, 68 S.W.2d 691; State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 985, 70 S.W.2d 52; State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 992, 70 S.W.2d 55; State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 995, 70 S.W.2d 57; State ex rel. Alton R. Co. v. Public Service Commission, 334 Mo. 1001, 70 S.W.2d 61. Jurisdiction having been conferred upon the commission, it is "generally held that a railroad company may be required, without any violation of its constitutional rights, to reconstruct, relocate, or eliminate a highway crossing, or to bear or to contribute to the expense thereof; at least, where such action is not arbitrary or unreasonable." Annotations 109 A.L.R. 768, 769; 79 L.Ed. 966; 98 L.Ed. 62; Erie R. Co. v. Board of Public Utility Commissioners, 254 U.S. 394, 41 S.Ct. 169, 65 L. Ed. 322.

The present bridge is nineteen feet wide and its vertical clearance is four inches less than is now permitted by the rules of the commission. Photographs of the bridge show that the "rubble masonry wing wall" has settled and pulled away from the abutment, some of the timber columns have rotted both at their bases and caps, the concrete work is "honeycombed" in several places and the steel work has rusted and eroded in several places. The bridge was originally designed to carry a ten to fifteen-ton load and today, admittedly, has a capacity for a six-ton load only. It is not necessary to detail the oral testimony as to the deterioration of the bridge, it was finally closed and the commission found that it is unsafe and the railroad does not contend that this finding is not supported by evidence. The present bridge could be re-

paired for approximately $20,000, therefore it is contended that there is no substantial evidence that the new bridge is needed. It is also urged that the order is unreasonable. because the petition did not ask for "an entirely new bridge," and finally it is said that the apportionment of one third of the cost and the future maintenance to the city is arbitrary.

■■ Complaints or other pleas before the commission are not tested by the rules applicable to pleadings in general, if a complaint or petition "fairly presents for determination some matter which falls within the jurisdiction of the Commission, it is sufficient." State ex rel. Kansas City Terminal Ry. Co. v. Public Service Commission, 308 Mo. 359, 372, 272 S.W. 957, 960. The parties were not misled as to the issues being tried and there is no claim of surprise or of unpreparedness; the railroad's only claim was that the bridge could be repaired. But, in accordance with the testimony of an engineer, the commission found that "it would be improvident to order the repair of this bridge since, when repaired, it is doubtful if it would have the load capacity reasonably required and, after all, it would be an old bridge." Therefore, it was the opinion of the commission that the old bridge should be replaced with a new concrete and steel bridge twenty feet wide. Other relevant factors considered by the commission were that when Bellefontaine Neighbors was incorporated there were 766 residents while it now has a population of 22,000 and is growing. There have been "184 to 350" homes constructed in the immediate vicinity of the bridge since 1950. The Riverview High School, at Shepley Drive and Toelle Lane, serves a district of nine square miles with a population in excess of 40,000. Normally, fifteen daily school buses carrying 850 pupils would cross the bridge but at the time of the hearing detoured over a hazardous route. There were other factors but it is not necessary to detail them here because virtually every claim now made by the railroad, including the unfairness of the apportionment of cost

and that a new bridge is not needed, has been advanced in numerous other similar cases and without exception it has been held that they did not demonstrate that the commission's orders were unreasonable or arbitrary. State ex rel. Kansas City Terminal Ry. Co. v. Public Service Commission, supra; State ex rel. Missouri, K. & T. Ry. Co. v. Public Service Commission, supra. The five Alton railroad cases, decided in 1933, involved bridges, viaducts, subways and grade crossings in Kansas City and in the first of the cases, 334 Mo. 832, 68 S.W. 2d 691, 693, a new permanent underpass was ordered constructed "about 60 feet east of the east side of the present underpass."

■ After this cause was pending in the circuit court the railroad filed a motion "to remand cause to Public Service Commission to hear evidence of changed conditions or in the alternative to stay proceedings." It is now urged that the circuit court erred in refusing to remand the cause to the commission to hear the evidence of changed conditions and thereby, it is said, the appellant has been deprived "of its right to a fair and impartial hearing and of its right to a fair review" of the commission's order "in contravention" of the minimum standards of the Administrative Procedure Act and the constitutional provision for judicial review of administrative decisions. Const.Mo., Art. 5, Sec. 22, V.A.M.S.; V.A.M.S. Secs. 536.010–536.140. The parties have briefed and argued at length the problem of whether judicial review of the commission's orders is governed by the Administrative Procedure Act or whether the statutes concerning the commission and the review of its orders (V.A.M.S. Secs. 386.500, 386.510) are preclusive. But it is not necessary in our view of the record to embark upon a discussion of these matters; it is assumed, solely for the purposes of this opinion, that in some rare circumstances either the circuit court or this court could remand a cause to the commission for the purpose of hearing new· or additional evidence as to changed conditions. But see and compare: 73 C.J.S. Public Administrative Bodies and Proce-

dure § 238, p. 607; 42 Am.Jur., Secs. 224–225, pp. 662–663 and 73 C.J.S. Public Utilities § 64j(4) (cc), p. 1165.

The railroad's motion states that subsequent to March 13, 1958, the date upon which its motion for a rehearing was denied by the commission, "petitioner obtained evidence of facts and circumstances material and important to the issues in this proceeding, which facts and circumstances were and are substantially changed subsequent to the hearing in this proceeding." The changed fact, according to the petition, was that since the original hearing certain streets had been improved and that "there is now in construction and will be completed prior to the beginning of the next school year an even better route, both which routes are and will be located across a modern steel and concrete bridge across petitioner's tracks at Chambers Road, *approximately six-tenths of a mile south of the said Shepley Drive.*" (Italics supplied.) Attached to the petition is the affidavit of a "special agent" in which the facts with respect to the high school buses and their routes are detailed. It will be observed that it is not alleged in the motion that the railroad had no prior knowledge of the proposed street improvements or of the bridge over its tracks at Chambers Street. In short, the motion is not in fact a proper and conventional claim or plea of newly discovered evidence (Arnold v. May Department Stores Co., 337 Mo. 727, 740, 85 S.W.2d 748, 756), it is simply a statement that conditions had changed in this one respect—the routing of the school buses.

Aside from this, however, the City of Bellefontaine Neighbors filed the counter affidavit of its mayor in which it was stated that the school bus route mentioned in the railroad's affidavit was "one of the 'circuitous routes' found by the Commission" and was not a change in condition. The city's affidavit stated that the named street improvements resulted from bond issues and action taken in 1955 an "was a matter of public record so that information with re-spect thereto was available to all parties at and prior to said hearing of October 3, 1957." This affidavit set forth at length additional facts with respect to schools other than the high school and finally affirms that the Chambers Street Bridge over the railroad's tracks "was in existence and use at the time of said hearing on October 3, 1957, and for a long time prior thereto" and therefore it is said that the Chambers Street Bridge and its use is not a change in condition.

In addition to all this there was a hearing in the circuit court, apparently on the railroad's motion to remand, and the railroad offered no evidence. In that hearing the Mayor of Bellefontaine Neighbors testified that the closed bridge on Shepley Drive deprived the city of other safety factors; specifically, fire protection (the firehouse being on Shepley Drive). He said that people living in the vicinity of the bridge were discommoded by having to make "detours to get out of that area where normally if the Shepley Bridge was constructed, it would serve the area adequately." According to the railroad's motion Chambers Bridge is six-tenths of a mile south of Shepley Drive Bridge and an examination of the record before the commission reveals that Chambers Road was mentioned five times and the mayor testified that "we have some projects on hand and other projects that we just completed in parts of our city. We are taking them piece by piece. * * * Widening them. * * * Paving them, straightening them." And finally, without recapitulation, the routes for school buses was but one of the many factors the commission considered in its findings and conclusion that a new bridge should be constructed.

In these circumstances it may not be said that the appellant was not accorded "the minimum standards of judicial review" by the circuit court or that the court erred in refusing to remand the cause to the com-

mission to hear evidence of alleged "changed conditions." Accordingly the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCK-MAN, JJ., and BROADDUS, Special Judge, concur.