STATE OF MISSOURI on the information of W. P. WILKERSON, Prosecuting Attorney, at the relation of the CITY OF SIKESTON, Appellant, v. MISSOURI UTILITIES COMPANY, a Corporation, BOATMEN'S NATIONAL BANK, a Corporation, and COMMUNITY POWER & LIGHT COMPANY, a Corporation.—137 S. W. (2d) 456.

Division Two, February 21, 1940.

*Roger A. Bailey* for appellant.

*S. W. Fordyce, N. W. Hartman* and *Fordyce, White, Mayne, Williams & Hartman* for Missouri Utilities Company and Community Power & Light Company; *Charles Claflin Allen, Jr.,* for Boatmen's National Bank.

COOLEY, C.—This action is based upon an information in *quo warranto,* instituted and tried in the Circuit Court of Scott County by the prosecuting attorney thereof at the relation and to the use of the City of Sikeston, seeking to require the Missouri Utilities Company, a Missouri corporation, to show cause why it should not be ousted from the rights and privileges of franchise to use the streets and public ways of said city, and asking ouster of said Utilities Company. The Boatmen's National Bank, of St. Louis, a corporation, trustee in a mortgage or deed of trust given by said Utilities Company to secure bonds issued by the latter, and the Community Power and Light Company, a nonresident corporation, holder of some, or all, of said bonds, are also made parties (respondent) because having, or claiming "some right, title or interest" in the franchise of the Utilities Company. It is alleged the privileges and franchise involved exceed in value the sum of $7500.

The information was filed August 9, 1937. The circuit court sustained a general demurrer to plaintiff's (relator's) petition. Relator declined to plead further, whereupon the court rendered judgment dismissing the petition and relator appealed.

The petition (or information) is very long. We shall attempt to summarize it, quoting only such portions as seem to be necessary to a clear understanding of the issues presented. From it the following alleged facts appear:

The City of Sikeston was organized as a city of the fourth class in 1891. In 1925 it became a city of the third class and has since functioned as such. The Boatmen's National Bank is a Missouri corporation, its only interest being, apparently, as trustee in a "bond indenture" or deed of trust given by the Utilities Company to se-

cure bonds issued. The Community Power and Light Company is a corporation organized under the laws of Delaware and authorized to do business in this State.

In 1902, by ordinance approved by vote of the people, the City of Sikeston granted a franchise "to use the streets, avenues, alleys and public ways of said city for an electric light and power distribution system to the Sikeston Electric Light Company, its successors and assigns" for a period of twenty years from approval of the ordinance by vote of the people, which approval was given December 16, 1902, the ordinance thereupon becoming effective and the franchise so granted expiring, therefore, December 16, 1922. It is alleged that the Missouri Utilities Company is the "last lineal successor" to said Sikeston Electric Light Company and has only such franchise rights as were granted to said original grantee.

On May 6, 1935, the city council of Sikeston passed an ordinance (set out in the petition) directing the Utilities Company to vacate the streets, etc., remove its poles and wires and discontinue furnishing light and power, within sixty days. Notice was served upon the Utilities Company. It refused to vacate.

The petition then alleges that "since the expiration of the franchise" granted to the "Sikeston Electric Light Company, its successors and assigns" (December 16, 1922), the city has installed an electric light and power plant, with distribution system, capable of supplying all needs of the city and its inhabitants and that there is now no need of two plants or of competition between the city plant and the Utilities Company.

The petition then points out that on August 27, 1931, there was filed in this court an information in *quo warranto*, State ex inf. Shartel, Attorney General, ex rel. City of Sikeston v. Missouri Utilities Co., wherein the relator sought to oust the Utilities Company and to exclude it from all rights, privileges and franchises of occupying the streets, etc., of said City of Sikeston, and the decision of this court in said case, handed down September 5, 1932, and reported in 331 Mo. 337, 53 S. W. (2d) 394, denying ouster on the ground of estoppel. For convenience and brevity we shall refer to this case as the first Sikeston case. There was a second case, to which we may have occasion to refer (also referred to by relator herein in its petition and cited in brief) entitled, State ex rel. City of Sikeston v. Public Service Commission of Missouri, 336 Mo. 985, 82 S. W. (2d) 105. This case, if necessary to refer to it hereinafter, will be referred to as the second Sikeston case. The petition also refers to rulings and orders of the Public Service Commission in its cases No. 4225, 4226 and 4241, P. S. C. Reports, Mo., Vol. 15, p. 150, and Pub. Serv. Comm. of Mo. v. Missouri Utilities Co. et al., 19 P. S. C. Reports, p. 619.

The petition then alleges that in the first Sikeston opinion this court held the city estopped because:—Relator then states his interpretation

of this court's opinion in the first Sikeston case and his conclusions in regard thereto. We shall endeavor to summarize said conclusions.

1. Because the city permitted the Utilities Company to operate without franchise from December 16, 1922, till July 15, 1931, without objection;

2. During said nine year period the city collected taxes on respondent's property, including a license tax, the latter paid to July 1st, 1932;

3. During said period the state collected from respondent a franchise tax;

4. Because the city appeared at a hearing before the Public Service Commission when the Utilities Company requested and received the Commission's orders permitting and approving its purchase of the property (at Sikeston, among other places) and its issuance of "stocks, bonds and other forms of indebtedness" and received the Commission's approval of the "right to engage in the electric business in said city;"

5. Because the city accepted said orders of the Commission and thereafter, for more than six years the Utilities Company operated in said city without objection.

The petition then alleges relator's reasons for claiming the holding in said first Sikeston case no longer applies. Again we shall attempt to summarize;—

1. Mere inaction, or "standing by" on the part of the city, when the company was "informed as to all conditions," does not work estoppel, citing State ex inf. McKittrick, Atty. Gen., ex rel. City of California v. Missouri Utilities Company, 339 Mo. 385, 96 S. W. (2d) 607 (Div. One. We shall refer to this case as the California case).

2. Reason No. 2, supra, does not now apply because payment of taxes regularly levied does not work estoppel (California case) and, moreover, the city had not exacted a *license tax* since July 1st, 1932.

3. Reason No. 3, supra, does not now bind the city because payment of franchise tax to the state is not ground of estoppel, again referring to the California case.

4. That reason No. 4, supra, does not now apply, because:—The "bonds and other forms of indebtedness created by the Missouri Utilities Company under and by virtue of the order of the Public Service Commission . . . in its Case No. 4226 are now long past due and *either paid or reissued. . . .*" (Italics ours. It is not alleged that they are paid and from the whole tenor of the petition it seems plain that they are not paid, but probably have been reissued.) The petition then alleges, on this point, in substance, that the city *did not appear* and was not represented at the hearing before the Public Service Commission in said cases 4225, 4226 and 4241, and did not accept or approve the orders then made by the Commission, but that the Utilities Company "fraudulently" entered

the appearance of the city. This allegation is largely in the nature of a conclusion, but of this, if necessary, more hereafter. There is also some allegation, likewise in the nature of a conclusion, to the effect that the Utilities Company, in its return in the first Sikeston case, "fraudulently" alleged that the city was represented at the hearings before the Public Service Commission.

5. This "reason" in substance repeats that formerly stated, that mere "standing by" on the part of the city does not work estoppel, again referring to the California case.

In order to give a clear understanding of relator's contentions, as pleaded, we deem it necessary to quote here from the petition:

"Your petitioner further states that the opinion of the Supreme Court in the former ouster proceeding against the Missouri Utilities Company filed on August 27th, 1931, mentioned herein, was based upon the fraudulent Return of the Missouri Utilities Company, Respondent therein; that the City of Sikeston did not accept any order of the Public Service Commission of Missouri; that the Missouri Utilities Company did not rely in good faith upon any orders of the Public Service Commission, nor upon the acquiescence or approval of its rights by the City of Sikeston, but from and after the expiration of the franchise herein pleaded (1922) sought and continued to seek a new franchise; that certain officers of the Missouri Utilities Company appeared before the City Council on February 5, 1929, and sought the adoption of a street light contract which materially reduced the rates for street lighting and offered free of cost to the city to construct a white way system, which said proposed contract contained the following clauses:

" '10. In the operations connected with the supply of electrictiy for light and power, the City hereby grants to the said Missouri Utilities Company a general permit for excavation and use of the streets, alleys, avenues and other public places and to trim trees where necessary. . . .'

" '11. . . . This contract shall terminate ten (10) years after the date of its approval.' Which said contract the city refused to accept; that on January 6th, 1930, the Missouri Utilities Company presented to the City Council a proposed ordinance granting to it franchise rights for a period of twenty years, and providing that it be submitted to a vote of the people, which said ordinance the City Council did not pass; and that said Return in the former ouster suit as pleaded by respondent was fraudulent and misleading.

"Your petitioner further alleges that the Public Service Commission of Missouri issued its orders in Cases No. 4225, 4226 and 4241 on February 17, 1925, wherein the Missouri Utilities Company was authorized to purchase and operate the property of said company at Sikeston, Missouri, and issue its securities to pay the purchase price therefor and make improvements thereon; that if the Missouri

Utilities Company relied upon said Commission orders, or upon any alleged acquiescence of the City of Sikeston therein, then any franchise rights it may have had or had any reason to presume that it had or could so acquire have now long since expired; that the Missouri Utilities Company could not, if at all, so acquire franchise rights to use the streets, avenues, and alleys of the city for a longer period than ten years; that the bonds and securities issued by the Missouri Utilities Company under and by virtue of Commission Order No. 4226 above referred to were payable in ten years and said period of ten years has expired; that any franchise rights the Missouri Utilities Company had, or by reasonable inference could have thought that it had, expired on February 17, 1935, at which time it became necessary for said utilities company, if it expected to continue to use the public ways of the city of Sikeston, to secure a franchise from said city, and that said utilities company did not procure such franchise from said city, and that said utilities company did not procure such franchise and was by the city on May 7, 1935, ordered to vacate the public streets, avenues and alleys of said city.

"Your petitioner further states that, unless the city is permitted at this time to oust the Missouri Utilities Company, said company will continue to exercise the privileges of operation, will continue to usurp, enjoy and exercise a perpetual franchise, which privilege it has now exercised since 1922, a period of fourteen years. .

"Your petitioner further states that on November 1st, 1932, the Public Service Commission of Missouri in its Case No. 5068 issued its Report and Order determining the present Fair Value of the properties of the Missouri Utilities Company as of December 31st, 1931, and determined that said company should reduce its rates so as to earn not in excess of $7\frac{1}{2}$ per cent on the value so determined; that the Missouri Utilities Company cannot from the total net earnings so allowed it by the Commission under this order ever retire, even with perpetual franchise rights, the outstanding mortgage bonds, pay the interest thereon as it accrues, and pay seven per cent interest on its outstanding preferred stock issued in accordance with authority of the Public Service Commission in its Case No. 4225 and 4226 above mentioned. . . .

"Your petitioner further states that the Missouri Utilities Company is acquiring new rights and privileges by operating without a franchise, and is doing so long after it has enjoyed such privileges a sufficient length of time to have restored it to the same position it would have occupied had no estoppel existed, as it has now exercised such privileges for a period of fourteen years; that the $2,184,-000.00 of $6\frac{1}{2}$ per cent ten year first mortgage bonds, issued by virtue of Public Service Commission orders in Cases Nos. 4225, and 4226 in 1925, are due and should be paid, and it is therefore not necessary for the utilities company to further exercise the privilege of

franchise to pay off said bonds or to restore itself to the same position it would have occupied had no estoppel existed.

"Plaintiff further states that the Community Power and Light Company has recently filed a proceeding in the Federal Court for the Eastern District of Missouri in which, under oath, it states that the Missouri Utilities Company issued and sold its first mortgage bonds in the total sum of $2,185,000.00, bearing interest at the rate of 6½ per cent per annum; that for the purpose of securing the said bonds the said Missouri Utilities Company made, executed and delivered to the Boatmen's National Bank in St. Louis, Missouri, as corporate trustee, its certain bond indenture and deed of trust covering and granting a lien upon all of the physical properties, assets and franchises of the said Missouri Utilities Company, including the physical properties, assets, and franchise rights located within the City of Sikeston, Missouri; that the said bonds in the total sum of $2,185,000.00 were purchased by the Community Power and Light Company, and it is now the owner and holder of said bonds.

"That, because of the statements made by Community Light and Power Company in its said proceeding in the Federal Court, said company and said Boatmen's National Bank claim some interest in the Franchise rights, if any, of the Missouri Utilities Company in Sikeston, Missouri, the exact character of which is unknown to this Plaintiff, and said Boatmen's National Bank in St. Louis and said Community Light and Power Company are hereby made parties defendant in this suit so that their interests and rights, if any, may be determined and adjudicated."

The first Sikeston case above referred to was by the court en banc. The second was by Division One. Those decisions, especially the first, should be read in connection with this opinion. The California case was also decided by Division One. Relator, as will be seen from what we have said above, places much reliance on the California case as rendering inapplicable the holdings of this court in the first Sikeston case. Not only was the opinion in the California case a divisional opinion (which could not overrule a decision of the court en banc and was not certified to the court en banc) but we do not understand that decision to attempt to overrule the said Sikeston case. The facts in the California case (in which ouster was ordered) were substantially different from those in said Sikeston case and from those in the instant case. In said Sikeston case we discussed at length the question of estoppel and, for reasons therein stated, held that the city was estopped to enforce ouster against the Utilities Company. We shall not take space to repeat or quote the reasons there stated. They, or most of them at least, still exist, as shown by the petition herein, except relator says that the city no longer exacts a license tax and that the bonds issued by the company, pursuant to the Public Service Commission's orders, have matured and should

have been paid or "have been paid or reissued." It is apparent they are still outstanding.

In the second Sikeston case this court said, 336 Mo. l. c. 995, 82 S. W. (2d) l. c. 108, that the question of the right of the Utilities Company to be operating in the city had been definitely and conclusively adjudicated in the first case (referring, however, apparently to conditions as of the time of that adjudication). We find no such change of conditions between those existing when the first Sikeston case was decided, as pointed out in that case, and those now pleaded, as would, in our opinion, justify now the ouster then denied.

■ We do not think force can be given to the allegation of the petition that the city did not appear and was not represented at the Public Service Commission hearing. The record of that body, as published, shows that the city was there represented by counsel. We found (from the pleadings, taken as true) in the first Sikeston case, that the city had appeared and that it had accepted the Commission's orders. In the second Sikeston case, speaking of the sale to and purchase by the Utilities Company of the Sikeston properties the court pertinently said—336 Mo. l. c. 997, 82 S. W. (2d) l. c. 109, "There is no contention that the city did not know of the sale and the application for its approval and it certainly knew that the Utilities Company was buying them for the purpose of operating them and not to junk them." So say we now. This belated—and it seems to us somewhat collateral—attack on the validity and binding force of the Public Service Commission's order and the city's acceptance thereof, and upon our decision in said first Sikeston case, cannot prevail.

■ For the reasons above indicated we think the judgment of the circuit court should be sustained. But there is another reason that, we think, should be taken into consideration. It is pleaded that the Community Power and Light Company (a nonresident 'corporation) has filed and now has pending a suit in the Federal Court, which it is apparent from the petition may and probably does involve the question of whether or not said Utilities Company may properly be ousted because of the interests of bondholders. That such question may be considered, at the suit of a bondholder, see Knickerbocker Trust Co. v. City of Kalamazoo, 182 Fed. 865; Adam v. New York Trust Co. (C. C. A.), 37 Fed. (2d) 826. In its brief here (not denied) respondent says the "bill of complaint" or petition in said case asks for a declaratory judgment against Mr. Wilkerson, Prosecuting Attorney, the City of Sikeston and the members of the Board of Aldermen or City Council thereof, and that the Prosecuting Attorney, for himself and the other defendants therein has filed an answer and the case is still pending. As to some of those matters the petition herein is silent and on demurrer to the petition we cannot notice them. But enough appears from relator's petition to show that there is a suit pending in the United States District Court (whose

jurisdiction is apparently conceded) which involves, to a very considerable extent, the questions of forfeiture of franchise rights and ouster, particularly as affecting bondholders. And because of that interest of bondholders the Boatmen's Bank and the Community Power and Light Company are made parties herein.

That the franchise rights of the Utilities Company constitute a valuable part of the bondholders' security cannot be doubted, and that such bonds were issued by the company by permission and approval of the Public Service Commission and with the knowledge and acquiescence of the city we think equally clear.

It is not specifically stated in relator's petition that the Federal Court has jurisdiction in the suit referred to, but no other possible inference can be deduced from the allegations of the petition (above quoted). Said petition pleads lack of knowledge on relator's part of the character of the claims of the Boatmen's Bank and the Community Power and Light Company. It would seem such knowledge could easily have been obtained by reference to the pleadings in said Federal Court case. The petition herein shows that said suit in the Federal Court had been filed and was pending when this suit was filed. The petition herein, while referring to that suit, does not plead enough facts relative thereto to enable the court to determine whether or not proceeding with this case would engender conflict of jurisdiction and confusion. We are not placing our affirmance of the judgment below on this ground, but suggest the thought that it may be given some consideration in the interests of justice and orderly procedure. The judgment of the circuit court should be affirmed. It is so ordered. *Westhues, C.,* concurs; *Bohling, C.,* concurs in result.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.